No. 403

First Circuit

---

RICHARD v. POITEVENT & FAVRE LUMBER CO.

---

(February 13, 1929. Opinion and Decree.)
(April 13, 1929. Rehearing Refused.)
(May 20, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

---

Hy. L. Garland, of New Orleans, attorney for plaintiff, appellant.

Harvey E. Ellis and R. D. Jones, of Covington, and Spencer, Gidiere, Phelps and Dunbar, of New Orleans, attorneys for defendant, appellee.

MOUTON, J. Plaintiff bought a tract of land in 1916 from George F. Banks who had acquired it from Mrs. G. W. Fuller in 1908, and from the Slidell Savings and Homestead Association in 1912. In both of the deeds to Banks, from whom

plaintiff bought, the land is described as lot 1-B according to a plan made by Paul Gusmen, C. E. In the sale from Mrs. Fuller to Banks it is declared that the vendor inherited the property from her father, Thomas Crawford, in the partition of his estate. This Thomas Crawford was the original grantee of the land from the government of the United States.

In March, 1926, as plaintiff was having posts set up with a view of building a fence along the meanderings of Bayou Brockham which she claims as being the eastern limit of her land, the erection of the fence was stopped under the instructions of defendant company which had the posts removed.

This suit, strictly a possessory action, was brought by plaintiff two days after the disturbance, in which she prays to have defendant enjoined from interfering with her possession. The titles mentioned in plaintiff's petition are referred to only to show the extent of her possession.

Banks, plaintiff's vendor, had the land fenced in and lived in a house built on it. He therefore took actual possession under his title from Mrs. Fuller which formed part of Section 40, T. 8, S. R. 14 E., which had been originally granted by the U. S. Government to her father, Thomas Crawford. Banks lived on the property two or three years, the house which he occupied burned down and he moved off. He says it was fenced in when he bought, by a picket fence around the house, and a barbed wire fence which followed the edge of the swamp, and which ran up right next to the bridge. He says that the Gusman plan follows this swamp edge, but he disclaims having any knowledge of Brockham Bayou, which is the eastern boundary of Section 40, according to plaintiff's contention.

Plaintiff acquired in 1916, and says she took immediate possession under her title. Her husband, who has since died, she says, acting as her agent, built houses on the land, and cut some timber on it. She says that when she took possession there remained remnants of an old wire fence along the border of the highland, and the edge of the swamp. This fence, no doubt, was what remained of the fence to which Banks, plaintiff's vendor, refers in his evidence. The fact is that Anderson, a witness for defendant, says that eighteen or twenty years ago there was a barbed wire fence nailed to pine trees close around the edge of the swamp, and that there are yet some wires, though rusty, that are sticking out of the trees.

Several witnesses for defendant say that they have not seen any remnants of a fence along the edge of this swamp though they have often been over the property, at various times, and for many years back. It may be very true that these witnesses never saw a fence there or remnants of it, but their testimony is negative in character, and must yield to the positive statements on the subject by Banks, plaintiff and Anderson, witnesses hereinabove referred to.

Plaintiff testifies that her husband, acting for her, had set up some posts along the foot of the hills where the old fence had been built with the view of building a new fence or restoring the old one although he never completed it by stringing the wires. This was, however, an act of actual possession by plaintiff to the edge of the swamp. It was along the line of this old fence that plaintiff was building a new fence in March, 1928, when the posts she had set up were removed by defendant company and which brought on this litigation.

The defendant company claims title by virtue of a patent issued in 1881, to its vendors, Poitevent and Favre, according to the official plat of the survey of said lands in the State Land Office. The land is described in the patent as lots one, two and three, NE¼ of NE¼ of Section 1 in T. 8, S. of Range 14 east.

The solution of this case depends upon a proper location of the dividing line between these properties.

The map of survey of the United States Government shows that Section 40 of T. 8, S. R. 14 east, which was acquired by Thomas Crawford, original grantee, is bounded on the east by Brockham Bayou.

Mrs. Fuller, daughter of Thomas Crawford, acquired in the partition of her father's estate the lot designated 1-B on the Gusman plan, and which she conveyed to Banks, plaintiff's author. This lot is bounded on the east by Brockham Bayou. In the sale from the Slidell Building Association to Banks, the boundary line is also given as Brockham Bayou.

In Safford vs. Albritton, 161 La. 773, 109 So. 486, the Court said that a survey with which land is granted by the United States Government becomes as much a part of the grant as the patent, and controls as far as limits are concerned.

In Gilmore vs. Lyons Lbr. Co., 159 La. 18, 105 So. 85, a State patent gave an acreage of a tract of land that conflicted with a survey approved by the Surveyor General, which was held to prevail over the area referred to in the patent.

This general rule is, in cases of this character, that the calls in a survey for natural and permanent objects will control other and conflicting calls. The parties in such cases are entitled to have

the lines re-established upon the ground as originally located by the Government Surveyor. Revised Statutes, sec. 3745, says, in reference to re-surveys, that the surveyors must take special care in all such cases to be guided by the original surveys. It must therefore be held that Brockham Bayou is the eastern boundary of Section 40, and of lot 1-B, which plaintiff acquired as a portion of that section deriving her title thereto, through George F. Banks, from Mrs. Fuller, daughter of the original grantee of Section 40. It is true that plaintiff and Banks both disclaimed knowing anything about Bayou Brockham, but they both say that their possession extended to the meandering edge of the swamp or to the foot of the hills, which the record clearly shows are on the west side of Bayou Brockham as appears on the Government map.

Plaintiff and her author, Banks, took actual corporeal possession of the land, and have so held it for many years, according to the extent and limits of their title. Plaintiff has brought her action well within the year from the disturbance she suffered in fact by the removal of the posts she had set up to erect her fence; she was therefore entitled to bring her possessory action. Delaney vs. Levi, 19 La. Ann. 251.

This rule is so well established that the citation of recent authorities is unnecessary.

The defendant's land is situated east of Bayou Brockham, and if defendant ever had actual possession of the land in dispute it could not be by virtue of its title by patent from the State which was granted to its author in 1881. If the patent conveyed an acreage across Brockham Bayou extending to the west side to where the posts were being set up, it must

yield to the grant to Thomas Crawford as shown by the United States survey as was held in citations above referred to.

The defendant company contends that the survey made by Pugh which met with the approval of other surveyors, shows that the dividing line between the properties runs along the disputed point where the posts were dug up under its instructions. In making this survey, as appears from his testimony, Pugh took no notice of Brockham Bayou as being the boundary line. He relied on field notes of prior surveyors in searching for some corner post as a starting point. He says that the lower part of this bayou has been made navigable by dredging, and that going northward it ends into a slough. If he had followed the original United States Government plat as he was required to do, he would have taken this bayou, water course, stream, or slough into account, and by so doing would not have established the line across Bayou Brockham, on its west side which fell within the eastern limit of Section 40, originally granted to Thomas Crawford.

If defendant ever had adverse possession, as it claims, on the west side of the bayou it was, without title. Such being the case it could claim possession only by enclosures, and not beyond such enclosures. 1 M. (N. S.) 480; McDonough vs. Childress, 15 La. 560; Ellis vs. Prevost, 19 La. 251.

There is no evidence that defendant ever occupied or possessed any particular spot or acreage by enclosures within which it could claim adverse possession, without title.

Plaintfif, on the other hand, has proved her actual possession during the period required by virtue of her title up to the line in dispute, and she is therefore entitled to a judgment maintaining her possession.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled and reversed, and it is further ordered and decreed that plaintiff have judgment against defendant perpetuating her injunction, inhibiting and prohibiting defendant company from interfering with her possession, and from erecting a fence where the posts were removed by defendant along the disputed line in this contest, and that defendant pay all costs of suit.

---

## ON APPLICATION FOR REHEARING

MOUTON, J. We held that this suit was strictly a possessory action, which evidently excludes the idea that it could be either a boundary or petitory action. We said: "The titles mentioned in plaintiff's petition are referred to only to show the extent of her possession." We found that under her title she had had actual possession for a much longer period than one year up to the edge of the swamp where many years before a fence had been built; that it was along this line that she was building a fence when the disturbance in her possession by defendant occurred. It was up to this disputed line that we held plaintiff had a right of possession, and to an injunction to maintain that possession. We referred to the title of defendant to show that it did not extend to this disputed line, and for that reason, could have no legal possession at that point, except by virtue of fences or enclosures, of which there is no proof whatsoever.

Counsel for applicant are therefore in error if they construe our opinion or decree as dealing with either a petitory action or boundary suit.

We decreed plaintiff entitled to an in-

junction prohibiting defendant from interfering with her possession up to the line in contest, and find no reason advanced in the application to warrant a change or modification of our judgment.