59 So.2d 434

**HILL v. RICHEY et al.**

No. 40211.

April 28, 1952.

Rehearing Denied June 2, 1952.

K. Hundley, Edwin O. Ware, Stafford & Pitts, Alexandria, for defendants-appellants.

Peterman & Burden, George B. Hall, Alexandria, for appellee.

HAWTHORNE, Justice.

This is a possessory action in which plaintiff, Robert Lee Hill, seeks to be restored to, and quieted in, the possession of a tract of land containing 86.65 acres, situated in the Parish of Rapides, and seeks damages in the sum of $6,000 as a result of the alleged wrongful cutting and removing of the timber from the tract. After trial on the merits there was judgment for the plaintiff maintaining and quieting his possession to all of this tract except a portion in the south end thereof. This judgment reserved to plaintiff the right to ascertain what timber, if any, was cut from that area of which he was maintained in possession and to bring further proceedings for damages resulting from the trespass. From this judgment defendants, W. O. Richey, W. E. Kolb, and Kellogg Lumber Company, have appealed. Plaintiff has answered the appeal seeking amendment of the judgment to recognize his right of possession to the entire tract and to award him damages in the sum of $5,131 as a result of the cutting of the timber and the trespass.

Plaintiff Hill is the owner of a tract of land comprising approximately 617 acres. Adjacent to and east of his land, defendant W. O. Richey owns a tract containing approximately 520 acres. Both the plaintiff and this defendant claim title to the disputed area from a common author. Plaintiff Hill acquired his interest by inheritance from his wife, Mrs. Hattie Clark, the vendee in 1898 of Mrs. Clemmie Brian. Defendant inherited his tract from his father and mother, whose immediate author in title had acquired the land from Mrs. Brian in 1910.

This litigation arose under the following circumstances: Defendant Richey sold the timber on his tract of land to W. E. Kolb, who in turn sold it to the Kellogg Lumber Company. Before the cutting of the timber for which plaintiff seeks damages, the purchaser of the timber caused a survey to be made of the boundary between the Hill and Richey tracts to establish the extent of the property included in the timber purchase. Defendant Richey had the line established by this survey marked on the ground in red, and this line is the western boundary of defendant's plantation according to the calls in his deed. This line will be hereinafter referred to as "the red line". On a large

map or plat introduced in evidence by the plaintiff this line which we have just described is shown in red. Plaintiff contends that the boundary line between these two plantations is located somewhat to the east of the red line, beginning at a common point on the north and proceeding in a southerly direction to the southern boundary of Section 25, Township 5 North, Range 4 West. This line has been marked in yellow on the map offered in evidence and will be hereinafter designated as "the yellow line". The tract of land of which plaintiff seeks to be maintained in possession is the area between these two lines and is in somewhat the shape of an inverted "V". On the north these two lines have an apex or common point. Both run to the southern line of Section 25, and at that point the distance between them is about 24.56 chains. In the early part of 1948, the actual cutting of the timber was begun on the land situated between the two lines, and within a year, in June, 1948, the present suit was instituted.

The evidence is convincing and establishes beyond question that for many years the line now designated as the "yellow line" has been recognized by the owners as the boundary line between their respective plantations, and the area between these two lines was considered a part of plaintiff's lands or plantation. At the time of the timber sale made by defendant Richey, he pointed out to the purchaser this yellow line as the dividing line between his plan-

tation and that of plaintiff, or called to his attention that the land west of the yellow line did not belong to him but belonged to another. After the survey was made of the red line, the defendant Richey instituted suit against the purchaser of the timber, alleging that at the time of the sale he did not know that he owned the area between the two lines, that the timber thereon was worth $5000.00, and that he was entitled to recover this amount from the purchaser. That suit was compromised by the purchaser's paying an additional consideration for the timber sold.

The yellow line is marked on the ground by blazes on trees, by fences, or by remains of old fences such as old pieces of wire in the trees, and old surveyor's marks on the trees are evidence that the line had been surveyed at some time in the past. Along the entire length of this line there is a fence or evidence of a fence except along portions at the north and south ends. Plaintiff, now 76 years of age, testified that there had been a fence on this line since he was a 10-year-old boy; that the fence now standing was built by him in the early 1930's, and that it had been repaired by him or his tenants from time to time since then. Defendant Richey himself admitted that there was a fence along portions of this line when his father bought the property in 1918, and that he himself constructed a fence along a portion of this line. Both plaintiff and defendant had cross fences running east and west which tied

onto the existing fence along this line. Along the north and south portions of the line where there are no fences the land is low and swampy and under standing water most of the time and during part of the year is covered by water from one and one-half to three and one-half feet deep. Along these portions of the line there are hacks and blazes on the trees, evidently made by a surveyor, and "No Trespassing" signs bearing Hill's name. Defendant Richey had likewise posted the property on the east side of the line. The evidence shows that for many years prior to this litigation this yellow line was generally recognized and accepted not only by plaintiff and defendant but by the entire community as being the boundary line between these two plantations.

Plaintiff Hill or his wife, who had resided on this plantation since 1913, had actually farmed and cultivated all portions of the land between the two disputed lines which were susceptible of cultivation. They themselves or their tenants had grown and cultivated crops of corn, cotton, and hay, and these operations had been continued to the yellow line. Hill had grazed cattle, sheep, goats, and hogs over the entire tract, including the swampy portions, and on occasions had rented the property to others for grazing their cattle. From the swampy areas his tenants from time to time had cut ties. Furthermore, he had some livestock grazing on the tract at the time of the trial. He had also sold the timber on three different occasions from the swampy areas, and his purchasers were engaged in the cutting and removal of such timber on each occasion for several months. On one of these occasions a large crew, whose operations were extensive, actually were engaged in the cutting and removing of timber for approximately eight months.

There is no evidence that prior to this controversy the red line had ever been surveyed on the ground or that defendant Richey ever at any time had or took corporeal or actual possession of any part of the land between these two lines.

The question presented in the instant case is whether the plaintiff has the requisite possession to bring a possessory action under Article 49 of the Code of Practice. Under this article the party bringing such an action must show (1) that he had the real and actual possession of the property at the instant the disturbance occurred—mere civil or legal possession is not sufficient—, and (2) that he had that possession quietly and without disturbance, by virtue of one of the titles prescribed in Article 47 of the Code of Practice, for more than one year prior to his being disturbed. Article 49 also provides that, if one possesses all of the essential elements to maintain a possessory action, as set forth therein, it matters not whether he is a possessor in good or in bad faith, and even a usurper shall nevertheless be entitled to the possessory action.

Defendants' contentions, stated concisely, are that the plaintiff did not have the requisite possession under Article 49 because he had not been in actual possession for more than one year prior to the suit, and that he had never had actual possession because as a bad faith possessor he must possess by enclosure.

Over 100 years ago this court had occasion to interpret the meaning of Article 49 of the Code of Practice in the leading case of Ellis v. Prevost, 19 La. 251, and the interpretation given therein has been consistently followed by this court ever since, that is:

"* * * 'When a person has once acquired possession of a thing, by the corporeal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or through others.' La.Code, articles 3405, 3406 and 3407. Thus, if after having abandoned the corporeal possession of my house, or the cultivation of my field, I continue to possess it civilly; the intention which I have of possessing, will preserve the possession in me; unless a third person has usurped or taken such possession from me, during the time required by law, or I have failed to exercise an actual possession for ten years; and if in the mean time, I am disturbed in my possession, I have the right before the

expiration of one year, and by virtue of my civil possession, founded on my previous and anterior corporeal and actual possession of the property, to institute a possessory action to recover it.

"This is undoubtedly the meaning of the *art.* 49 of the Code of Practice, which must be construed in relation to the articles of the Louisiana Code on the subject of possession; this article says: 'In order that the possessor may be entitled to bring a possessory action, it is required: 1st, that he should have had the real and actual possession of the property, *at the instant when the disturbance occurred:* a mere civil or legal possession is not sufficient.' Now, we understand the expressions, *real and actual possession,* contained in this law, as used in contra-distinction with the possession which is purely civil and legal, that is to say: with the possession, which is entirely devoid of the quality of having its source in or being derived from a previous actual and corporeal one; such possession is not sufficient; but when it has been preceded by the corporeal enjoyment of the thing, and the possessor has not ceased to exercise such enjoyment for ten years, the actual possession previously acquired is preserved and maintained, and it continues in the same manner and with the same effect, as if the thing

had always been actually and corporeally possessed. * * *

"It is clear, therefore, that if the *article* 49 of the Code of Practice was to be construed strictly and according to its literal meaning, there would follow the absurdity, that if a person was to absent himself temporarily, and leave his house unoccupied for a certain lapse of time, he could not on his return bring a possessory action against an intruder, who would have taken possession of it during his absence, and would be obliged to resort to the petitory action; his adversary would always successfully oppose to him the plea in the words of the Code of Practice: that he was not in the real and actual possession of the house, at the instant when *the disturbance occurred*. This cannot have been the intention of the law giver; and such an interpretation is too absurd, to be for a moment countenanced at our hands. * * *"

See Davis v. Dale, 2 La.Ann. 205; Taylor v. Telle, 45 La.Ann. 124, 12 So. 118; Handlin v. H. Weston Lbr. Co., Ltd., 47 La.Ann. 401, 16 So. 955; Industrial Lbr. Co. v. Farque, 162 La. 793, 111 So. 166; Lee v. Harris, 209 La. 730, 25 So.2d 448.

Saunders in his Lectures on the Civil Code, in discussing the fundamental principles relating to the Civil Law concept of possession and the possessory action, had this to say:

"When the possession has once been acquired it may be maintained without the actual physical presence of the possessor on the lands; it is maintained in the extent to which it was acquired, and to the extent to which the acts of ownership were exercised by the possessor. *The Code tells you that this possession is attributed to the possessor who has once been on the place and controlled it, as long as there are any vestiges on the land indicating the ownership by the possessor* (3501); for example, ruins of his house, though the ruins may be such as would scarcely indicate what the house was. * * *

"Of course, this attributed possession ceases in the face of exclusive opposing possession. If A has been in physical possession of a tract of land and then leaves the land, but leaves evidence of intention to keep it as his own, he will be deemed to be still in possession until somebody else takes actual possession but his attributed possession ceases in face of actual possession. *In the thirty years' prescription which is not based on title, the possession is called pedis possessio, foot possession; as there is no title to indicate the limits in which the possessor considers his rights as owner to extend, his position is limited by the area over which he exercises actual possession. The cultivated fields*

*would be the most obvious limits of possession but wood land or swamp land is susceptible of actual possession,* only there is a great deal of difficulty in determining how far the owner intended his possession to extend, whether he intended it to extend as far back as he cut wood and carried it away for timber or for houses on the plantation, or as far as he extended his ditches and kept them in repairs. * * *" (p. 138) (Italics ours.)

■ Civil possession of the property would be sufficient to maintain the possessory action, therefore, if it had been preceded by actual possession. A more serious question is whether the plaintiff possessed by enclosure so as to have had actual possession.

■ In the case of Prevost's Heirs **v.** Johnson, 9 Mart, O.S., 123, 174, this court for the first time announced the principle that, "* * * When a person claims by possession alone, without showing any title, he must show an *adverse* possession by *enclosures,* and his claim will not extend *beyond* such enclosures". In Ellis **v.** Prevost, supra, this rule of law was reiterated and has continued to be reiterated in the jurisprudence since that time. See Albert Hanson Lbr. Co., Ltd. v. Riggs Cypress Co., Ltd., 130 La. 772, 58 So. 567; Gray v. Grant Timber & Mfg. Co., 131 La. 922, 60 So. 617; Crichton v. Giddens, 148 La. 970, 88 So. 236; Ernest Realty Co., Inc., v. Hunter Co., Inc., 189 La. 379,

179 So. 460; Rhodes v. Collier, 215 La. 754, 41 So.2d 669; Richard v. Poitevent & Favre Lbr. Co., 10 La.App. 608, 120 So. 235, 121 So. 357; Frost Lumber Industries, Inc., v. Bluford, 13 La.App. 686, 128 So. 711.

■ The nature of the possession requisite for the possessory action of one claiming without title is the same as that of the possession upon which is based the prescription of 30 years. Our Civil Code in discussing the prescription of 30 years says:

"Art. 3501. The possession necessary for this species of prescription, when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor's intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts."

"Art. 3502. A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it any vestiges of works erected by him, as, for example, the ruins of a house."

"Art. 3503. How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends

only to that which has been *actually possessed* by the person pleading it." (Italics ours.)

In the articles of our Code dealing with this prescription of 30 years, Articles 3499 through 3505, both inclusive, there is nothing which limits it to land possessed by *enclosures* for a period of 30 years. The only restriction is that announced in Article 3503 that " * * * in the prescription of thirty years, which is acquired without title, it extends only to that which has been *actually possessed* by the person pleading it".

In discussing these articles it was said by the Court of Appeal, First Circuit, in the case of Ranger Land Co., Inc., v. Story, 200 So. 649; 1 So.2d 410, 411, that "* * * There is nothing said or implied in these articles that in order to possess, the land must be enclosed for the entire time, or for that matter, that it must be enclosed at all". It is well recognized, of course, that for the prescription of 30 years to be successfully pleaded the person pleading it must have the actual, physical, and corporeal possession of the property which he seeks to acquire by this period of prescription; that, when once this prescription has been commenced and established and has not been interrupted, it may be preserved by external and public signs announcing the possessor's intention to preserve the possession of the thing, and that in such case civil possession is sufficient to prescribe so long as there remain

on the property any vestiges of works erected by the possessor, as, for example, the ruins of a house. C.C. Arts. 3501, 3502.

We recognize also that under the jurisprudence a person claiming by possession alone and without title is required to show an adverse possession by enclosures, and that his claim will not extend beyond such enclosures. But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think that a *strict interpretation* should be given to the word "enclosures".

We are supported in this view by the interpretation given by this court in the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, to the word "boundaries" as used in Article 3437 of the Civil Code dealing with possession. That article provides: "It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included *within the boundaries.*" In that case this court said that "* * * The word 'boundaries,' in that article, means the *limits or marks of inclosure if the possession be without title,* or the boundaries or limits stated in the title deed if the possession be under a title. * * *" (Italics ours.)

Further, Article 826 provides:

"By boundary is understood, in general, every separation, natural or artificial, which marks the confines or line of division of two contiguous estates. Trees or hedges may be planted, ditches may be dug, walls or inclosures may be erected, to serve as boundaries.

"But we most usually understand by boundaries, stones or pieces of wood inserted in the earth on the confines of two estates."

 What the court means by "enclosures", as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means "enclosed only by a fence or wall" would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases.

The opinion of this court in the case of Ernest Realty Co., Inc., v. Hunter Co., Inc. [189 La. 379, 179 So. 461], supra, shows that its author was fully cognizant that the term "possess by enclosures" was not found in the articles of our Code, and that it was improper to give to such term a narrow and strict interpretation. He stated: "It is a well settled and established principle of law that where the legal and rightful owner of a tract of land has actual possession of a part thereof, he is in legal and constructive possession of the whole, except such portion thereof that may be in the actual possession and occupancy, by *inclosure or otherwise,* of a party claiming either by title under article 3478 or thirty years' adverse possession * * *." (Italics ours.)

In Labarre v. Rateau, 210 La. 34, 26 So. 2d 279, 284, this court overruled a plea of prescription of 30 years, but in the course of the opinion the author by his language clearly showed that he recognized that an enclosure, strictly speaking, was not sacramental to the possession of 30 years' prescription, and that the important thing was to determine the boundaries or extent of the possession. In that case it was said:

"Now the question is: Has the prescription of thirty years acquirendi causa accrued, thereby barring defendants' claim?

"As to the matter of possession necessary in acquiring by prescription we said in Continental Land & Fur Company, Inc., v. Lacoste, 192 La. 561, 562, 188 So. 700, 704, that: '* * * Article 3437 of the Civil Code declares that, in order for a person to take possession of an estate as owner, it is not

necessary for him to pass over every part of it, but it is sufficient if he enters upon and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries. In the Leader Realty Company Case [147 La. 256, 84 So. 648] it is said that the word "boundaries", in article 3437 of the Code, means the limits or marks of enclosure if the possession be without title, or the limits stated in the title deed if the possession be under a title. But it is not necessary for a person who takes possession of a tract of land to build a fence around it, in order to fix the boundaries of what he intends to possess, if the limits of his possession are marked by natural boundaries and if he actually possesses or uses all of the land within the boundaries. * * *'

"Also pertinent to the question of possession under the thirty years prescription is the * * * provision of R.C.C. Article 3503 * * *.

"In the present case the plaintiffs, on whom the burden rested, failed to prove the *existence of boundaries* to the property, either natural or artificial. True, their principal witness, a man of 66 years who had lived in the vicinity all of his life, testified that at one time there were certain fences and tree markings on the land in various places (most have since been destroyed). But he also said that the average person could not locate the lines, and that he could establish them only by the use of a compass." (Italics ours.) See also Henderson v. Henderson, La.App., 8 So.2d 133.

██ Furthermore, under the established jurisprudence of this court the corporeal possession necessary to support prescription is governed by the use to which the land is destined. What is essential for actual possession changes with the nature of the property, and may be different when it relates to one kind from what it is when it relates to another. Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574; Boagni v. Pacific Imp. Co., 111 La. 1063, 36 So. 129; South Louisiana Land Co., Ltd. v. Riggs Cypress Co., Ltd., 119 La. 193, 43 So. 1003; Long v. Chailan, 196 La. 380, 199 So. 222.

██ What constitutes possession in any case is a question of fact, and each case depends upon its own facts. McHugh v. Albert Hanson Lbr. Co., Ltd., 129 La. 680, 56 So. 636. In the instant case plaintiff has established and proved beyond all question that he had actually, physically, and corporeally possessed as owner the property between the two lines, and, within the meaning of Article 49 of the Code of Practice as interpreted by this court, his possession continued to the moment of the disturbance. The fences, remains of old fences, blazes and hacks on the trees evidently made by a surveyor, and the "No Trespassing" signs were sufficient under the facts of this case to establish with cer-

tainty and to give definite notice to the public and all the world of the character and extent of his possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof, especially when we consider the type of land between the lines and the nature of the property.

We therefore conclude that plaintiff has the requisite possession to bring a possessory action under Article 49 of the Code of Practice to be quieted and maintained in the possession of *all* the property between the two lines, and the judgment will be amended accordingly.

In its judgment the lower court reserved to plaintiff the right to ascertain with certainty the amount of timber cut on that portion of the tract in which it maintained plaintiff's possession, and no judicial determination was made in the lower court of the timber actually cut and removed from all of the tract. The lower court also reserved to the plaintiff the right to recover damages caused by the trespass by amendment to the instant suit or by separate suit.

The pleadings in this case disclose that the defendants Kolb and Kellogg Lumber Company applied for, and obtained, an order calling the vendor Richey in warranty, Richey having sold the timber to Kolb and Kolb having sold it to Kellogg Lumber Company, and the judgment appealed from in this case does not fix the liabilities, if any, under this call.

For this reason we have concluded to remand the case to the lower court so that that court may ascertain with certainty the value of the timber cut from the tract in which we have maintained plaintiff's possession, and may determine the liability, if any, or the rights of defendants Kolb and Kellogg Lumber Company under their call in warranty. In all other respects we shall affirm the judgment.

For the reasons assigned, the judgment appealed from is amended so as to maintain and quiet plaintiff in his possession of the following described property, to-wit:

"A certain piece, parcel or tract of land * * * being, lying and situated in Sections 25 and 38, T5N, R4W, Rapides Parish, Louisiana, being more particularly described as follows: commence at a point on the western boundary of Section 25, which point is north of the southwest corner of Section 25, as shown on a plat of survey by Howard L. L'Heureux, dated October 5, 1949, marked 'Plaintiff 2' in Civil Suit 36,372 on the Docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, and from said point run South 83° East a distance of 26.60 chains to establish the point of beginning of the property herein described; from said point of beginning run North 37° 30' East a distance of 38.90 chains; thence run North 12° 45' East a distance of 49.60 chains; thence run South 1° 46' East a distance of 15.03 chains; thence

run South 6° 13′ East a distance of 8.41 chains; thence run South 6° West a distance of 7.17 chains; thence run South 3° 54′ West a distance of 23.08 chains; thence run South 30° 50′ West a distance of 9.38 chains; thence run South 13° 29′ West a distance of 21 chains; thence run North 83° West a distance of 24.56 chains to the point of beginning, and being all of the property between the red and yellow lines on the hereinabove described plat of survey."

It is further ordered that this suit be remanded to the lower court so that that court may determine and fix the value of the timber cut and removed by the defendants from the property described hereinabove and determine and fix the rights and liabilities of all defendants under the call in warranty.

In all other respects the judgment is affirmed.

Appellants are to pay all costs.