AYRES, Judge.
This is a possessory action wherein plaintiff seeks and prays that he be maintained and quieted in his possession of a certain-described plot or parcel of land situated in the City of West Monroe. In answer to plaintiff’s demands, defendant admits the disturbance as alleged by plaintiff but denies plaintiff’s possession of the property.
On the initial trial in the district court, there was judgment in plaintiff’s favor from which defendant appealed. This court concluded, on that appeal, the factual issue presented for determination had not been preponderantly established. Hence, a motion urged by defendant-appellant to remand was sustained and, accordingly, the cause was remanded with instructions that the case be reopened for the reception of additional evidence from either plaintiff or defendant relating to plaintiff’s possession. 116 So.2d 211. On the remand, the case was again tried and additional evidence introduced. Judgment was then rendered in defendant’s favor rejecting plaintiff’s demands. From that judgment, plaintiff prosecutes this appeal.
The issue relates to the character of plaintiff’s possession of the property concerned and whether such possession is sufficient to support or maintain a possessory action.
The applicable rule of law is that where a person who has once acquired possession of a thing by corporeal detention of it, abandons such corporeal possession but continues to possess it civilly, his intention of possessing will preserve the corporeal possession in him unless a third person has usurped or taken such possession from him during the time required by law, or he has failed to exercise the actual possession for ten 3rears; and if, in the meantime, he is disturbed in his possession, he may, before the expiration of one year, institute a possessory action to recover or to be restored to and maintained in possession of the property by virtue of his civil possession founded on his corporeal and actual possession. Hence, civil possession of property preceded by actual possession is sufficient to maintain the possessory action. Code of Practice Art. 49; Hill v. Richey, 221 La. 402, 59 So.2d 434. See the authorities cited in the Hill case, particularly Ellis v. Prevost, 19 La. 251, and Saunders’ Lectures on the Civil Code, both of which are extensively quoted.
Plaintiff’s acquisition of the property herein involved was by deed from Ouachita Realty and Development Company, Inc., dated February 7, 1946, wherein the property was described as
A lot in Trenton fronting on the south side of Claiborne Street, bounded west by Cypress Brake, east by Crane, and south by Register.
Plaintiff alleged that, following his purchase of the aforesaid property, he took actual and corporeal possession by enclosing it with a fence, or fences, and that thereafter he continued in peaceful and undisturbed possession thereof until his possession was disturbed by the defendant on or about July 15, 1958, when the defendant entered upon said property with a bulldozer and cleared and removed not only his fences and the vegetation growing upon said lot but the top soil as well. His actual and corporeal possession of the property was allegedly continued by his civil possession.
The issue presented for resolution has, by the pleadings, been reduced to the question as to whether or not plaintiff, after acquiring the property, ever constructed a fence, or fences, enclosing the same.
The evidence is convincing that, after plaintiff’s purchase, he enclosed the property with a three-strand barbed-wire fence supported by and stapled to oak posts, except as to the east and west ends of the property where his fences were tied in *542 with, and connected to, existing fences in completing the enclosure.
Plaintiff’s testimony is that he employed and utilized the services of Wilbur Williams and Henry Naron in the construction of these fences. He testified as to his purchase and delivery to the job site of the necessary materials, wire, and staples. He daily supervised the work. Bayles’ testimony is that he constructed these fences, one on the north side continuing along the side of an imaginary projection of Claiborne Street to the drainage canal, and the other on the southern boundary line westward, likewise to the canal. These fences, according to his testimony, were tied into, or connected with, existing fences on both east and west ends of his property, which extended a short distance from and parallel with the drainage canal. Bayles’ testimony is corroborated by that of Williams who, as stated, with the assistance of Naron, actually built the fences under plaintiff’s supervision. Naron, in the meantime, is shown to have died.
That the fences were in fact built finds support, likewise, in the testimony of C. G. Wall, Sr. Wall was an officer of plaintiff’s vendor. Wall testified that he showed Bayles the lines or boundaries of the property to enable plaintiff to place the same under fence. His testimony confirms the fact that the fences were actually constructed at the locations or boundaries pointed out by him to plaintiff.
Dixie White, who lived near the property herein concerned, testified he was familiar with this property and that plaintiff, after his purchase, enclosed the whole of his lot under- fence. To the same effect is the testimony of William C. Kelly, Jr., and his father. The latter, for 29 years, or from 1920 to 1949, maintained a residence separated from the subject property by only one intervening lot and, since that time, has resided only two blocks away. Their testimony substantiates the fact that plaintiff fenced the whole of his property and that they pastured livestock and cattle within the enclosures for approximately two years.
Also appearing as a witness during the first trial was W. R. Townsend, superintendent of streets of the City of West Monroe. Townsend stated that, on projecting North Fifth Street across this property, barbed-wire fences were encountered on both north and south sides; that permission was obtained from plaintiff Bayles to cut these fences in order that the street might be constructed. This was shown to have occurred about 1955 or 1956.
Opposed to the aforesaid testimony is that of J. B. Watson, Vaughan T. Watson, Joe Staton, and the defendant, McGuffie, and his machine operator. Vaughan T. Watson claims title to a portion of the property allegedly possessed by plaintiff. The lot claimed by Watson is located at the east end of the tract involved and east of North Fifth Street. Both Watsons, as well as Staton, testified there were no newly-constructed fences in that area after 1945 and that, consequently, plaintiff’s property was not enclosed by fences. The defendant’s testimony and that of his employee is to the effect they neither saw nor noticed any fences while carrying on their operations. The property, however, was shown, beyond any controversy or doubt, to have grown into a wilderness by brush and briars. The growth was so rank as to prevent penetration even by sight for any appreciable distance. The fences were completely covered with vines and other growth, as evidenced by photographs taken of the areas undisturbed by defendant’s operations. The evidence, nevertheless, showed that vestiges of the fence, consisting of wire and posts, were deposited off the edges of the area cleared.
From a consideration of the evidence adduced on the original trial, the trial court concluded plaintiff had established, by a preponderance of the evidence, that he had, after his purchase of the property, enclosed it by fence. This conclusion was predicated on the testimony that the fences were con *543 structed westward to the canal, which presupposed that the canal had been previously constructed. On a showing made in this court in the motion to remand, that the canal had not been constructed until 1948, whereas it would appear, from the record that the fences were constructed in 1946 and that, therefore, the fences could not have been constructed in relation to the canal, the motion was granted and the case remanded. On trial following this remand, the engineer for the Department of Public Works, who made the survey for and supervised, in an engineering capacity, the construction of the canal, and the contractor for said construction, as well as several others who performed services in connection therewith, were called as witnesses. The testimony of these witnesses, supported by the records of the Department of Public Works, established that the canal was constructed in 1948 and completed in December of that year. In apparent contradiction to the testimony offered by plaintiff to the effect that the fences were constructed in relation to the canal, these witnesses testified no fences, as claimed to have been erected by plaintiff, existed in 1948.
Plaintiff, nevertheless, on the second trial, recalled, among others, the city’s superintendent of streets. He also produced, as witnesses, the city’s street construction foreman and six other municipal employees. All of these witnesses confirmed plaintiff’s contention of the building and the existence of the fences on both north and south boundaries of his property, at the time the work was undertaken to project North Fifth Street across this property. The enclosure of the property by fences and the reduction of the property to plaintiff’s actual corporeal possession, and not necessarily the exact time the enclosure was made, are the essential and material factors. Hence, a mere miscalculation as to the time the fences were built should not be accorded such importance as to discredit the witnesses’ testimony as to material facts of the case. It is a matter of common observation that memory of unessential details is dulled by the lapse of time.
The testimony of Manning McGuire, adduced on the second trial, explains, in our opinion, the apparent inconsistencies in the testimony of plaintiff and his witnesses, on the one hand, and the testimony of the engineer of the Department of Public Works and the contractor for the construction of the canal and his employees on the other hand. McGuire claims title to a lot designated as No. 29, located at the east end of plaintiff’s property, the greater portion of which was included under plaintiff’s fence. McGuire testified that, within a week or ten days after he acquired knowledge of plaintiff’s enclosure of his property, he contacted his lawyer who, under date of June 20, 1949, addressed a letter to plaintiff reading as follows:
“We have been informed by Manning C. McGuire that you have placed a fence upon property owned by Mr. McGuire in the City of West Monroe fronting on the .South side of Claiborne Street.
“The records in the Clerk’s office reflect Mr. McGuire as the record owner of this property since 1919 and this letter will constitute formal notice of your trespass.
“We ask that you either remove your fence or furnish satisfactory evidence of your title to this property.”
A second letter concerning the matter was written plaintiff by McGuire’s counsel July 25, 1949, which reads as follows:
“On June 20, 1949, we wrote you as per copy of our letter of June 20 which is enclosed herewith. We have not heard anything from you with reference to this matter and we are hereby again giving you notice of same by Registered Mail, Return Receipt Requested.”
It has been said that “Half a word fixed upon or near the spot, is worth a cartload *544 of recollection.” (T. Gray.) The foregoing, we think, constitute that “Half a word fixed upon or near the spot, * * * ” and establish, in connection with the other testimony in the record, that the canal was constructed in the fall of 1948 and that plaintiff’s fences were constructed in the spring or summer of 1949, or, at least, after the canal was constructed, as related almost uniformly by plaintiff’s witnesses. Hence, the testimony of plaintiff and his witnesses that the fences were constructed to the canal is consistent with the facts and that, likewise, the testimony of the witnesses for the defendant, consisting of the engineer for the Department of Public Works and the contractor for the construction of the canal, as well as those otherwise employed upon said project, to the effect that no fences existed, as claimed by plaintiff at the time the canal was being constructed, is consistent with the true facts. Thus, these apparently divergent views can be and are reconcilable. Each viewpoint may be acceptable as true without .in any manner discrediting the other.
Moreover, it may be pointed out that McGuire testified there was a fence at the east end of plaintiff’s property as well as the west end near the bayou or canal and that he assisted Gallaspy and McCormick in the construction of the latter fence.
The record also shows that plaintiff has paid all taxes assessed upon this property since its acquisition and that his intention to possess the property has continued.
The evidence to which we have referred preponderates, in our opinion, in plaintiff’s favor and establishes that, after purchasing the aforesaid property, plaintiff took actual possession by enclosing it with fences, and that his possession continued thereafter until disturbed by defendant’s trespass.
For the reasons assigned, the judgment appealed is accordingly annulled, avoided, reversed and set aside, and
It is now ordered, adjudged and decreed there be judgment herein in favor of the plaintiff, Albert Bayles, against the defendant, B. I. McGuffie, restoring unto Albert Bayles and maintaining and quieting him in possession of the following — described property, to wit:
A lot in Trenton fronting on the south side of Claiborne Street, bounded west by Cypress Brake, east by Crane and south by Register, and, as more particularly described, as situated in Section 44, Township 18 north, Range 3 east, West Monroe, Ouachita Parish, Louisiana, and as shown in plat and survey of J. M. Norris, registered land surveyor, dated September, 1958, reference thereto being made for greater certainty of description, provided that said possession is subject to the rights of the City of West Monroe in and to the right of way for North Fifth Street, as projected across this property.
It is further ordered, adjudged and decreed that plaintiff’s rights to hereafter claim and recover damages be reserved. The defendant-appellee is assessed with all costs, including the cost-of this appeal.
Reversed and rendered.
Before HARDY, GLADNEY and BOL-IN, JJ.