TUCKER, Judge.
Mrs. Lillian F. Martin, sometimes known as Peggy Martin, sued the heirs of George *359 Keller and A. S. Tomb, claiming possession as owner of the following 2.74 acre tract of land:
“A certain tract or parcel of land, together with all the improvements thereon and all rights, ways, privileges, servi-tudes and prescriptions appurtenant thereto or in anywise appertaining, lying, being and situated in the Town of Jackson, Parish of East Feliciana, State of Louisiana, and being more particularly described as fronting for a distance of approximately 1,380 feet on the North side of Louisiana Highway No. 10 (Charter Street) and being bounded on the North by Asylum Branch and lands of East Louisiana State Hospital, on the South by Louisiana Highway No. 10 (Charter Street), and on the west by Asylum Branch.”
Mrs. Martin alleged that her late husband, Louis Elmo Palmer, began exercising possession of the aforesaid property in 1927 and continued to do so until his death in 1942, and that, thereafter, she continued his possession of the property. She claims that an act of sale from Frank Herr to George Keller in 1911, and another from Abel T. Norwood to A. S. Tomb in 1881, operate as continuing disturbances of her possession. Plaintiff’s claims to the property in question were rejected in the trial court, and she has appealed reasserting her claims to ownership of the property by thirty years’ acquisitive prescription under Civil Code Article 3499.
During trial in the District Court a survey of the property in question was ordered by the trial judge. The resulting map which was accepted as Joint Exhibit 1, reveals that a substantial part of the property under litigation comprises portions of the streets of the town of Jackson, Louisiana: Paris, Magazine, and Locust Streets. Charter Street, which was claimed by plaintiff as the southern boundary of the property, is also included within the disputed property. Although these streets may become the subject of private ownership if abandoned by the city (C.C. Art. 482), there are no allegations and no proof to that effect. The Town of Jackson was not made a party defendant in this suit. A person claiming possession by thirty years’ acquisitive possession can claim only that which he or she actually possessed (C.C. Art. 3503). Since there is no evidence in this case to show plaintiff’s actual possession of the portion of the property represented as streets in the Town of Jackson, on the map adopted by all parties as the official representation of the disputed land, and since the Town of Jackson was not made a party defendant herein, plaintiff’s claims to these street areas must be rejected as totally unproved.
Plaintiff has claimed possession of the tract of land in question by various acts of possession. She alleges possession of the portion she refers to as “Lot Number One” by its being used as a car parking lot. She contends for “Lot Number Two” by her use of it as a garden, (which part she claims to have fenced), by its use for the pasturing of cattle, for running pigs, the sale of timber, gravel and pine straw, bull dozing, and the payment of taxes.
Two of the Civil Code articles applicable to the facts of this case are as follows:
“Art. 3500 The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal and under the title of owner.
Art. 3501 The possession necessary for this species of prescription, when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor’s intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts.”
A primary requirement for successful acquisition by possession under C.C. Art. 3500 is that it be under the title of *360 owner. Plaintiff claims title as a successor to her husband who allegedly began his possession of the disputed property in 1927. There is no evidence in the record as to the title under which Louis Palmer claimed possession. Plaintiffs husband’s possession is not even definitely established by the evidence, although there is testimony that he began to operate “Palmer’s Garage” and used Lot No. 1 as a parking area for the business in 1929. Plaintiff was not married to Louis Palmer until 1933; so, any adverse possession he began, if under title the ownership, would have enured to the benefit of his separate estate, if it had resulted in thirty years’ acquisitive possession. The tract in question was not mentioned in Louis Palmer’s succession, however. Plaintiff’s claim to the property under the title of being her husband’s heir is consequently to no avail. On the other hand, if plaintiff is claiming the property solely as a community asset, her acquisition would have to date from the date of her marriage in 1933, and would not be complete until 1963. The fact that the tract was not listed in her husband’s succession as a community asset is equally damaging to her title in this case; but, even if it could be proved that her husband considered the property a community asset, plaintiff’s claim to the tract would be only as an owner of an undivided one-half interest. Under the latter circumstance her husband’s heirs should have been joined in the suit as party plaintiffs. From the point of view of the “title of owner,” as provided in C.C. Art. 3500 we find plaintiff’s claim unrecognizable at the outset.
C.C. Art. 3500 requires “public” and “unequivocal” possession as well. There is no evidence in the record that may be considered as notice to the public of plaintiff’s ownership of the land in question. Certainly it was not unequivocal either. There is evidence that plaintiff’s brother-in-law claimed ownership of the property in question until his death in 1958. Plaintiff explains his actions as “helping her out” as a good brother-in-law, since she had no one else on whom to rely; yet it is significant that he kept part of the money for which he sold timber from the subject tract. His son, Mathew Palmer, Jr., even thought that he had inherited the tract after his father’s death, and executed a lease of a portion of same to Peterson Ford, Inc. We note that the attorney who prepared the lease for Mathew Palmer, Jr., also represents the plaintiff in this case. In all likelihood he would have required plaintiff to sign the lease also, if her claims to the property were as well known to the public and as unequivocal as she now alleges.
The essentials for possession to support prescription are governed by the character, nature, and location of the property possessed, and the use for which it is destined. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952); Jacobs v. So. Advance Bag and Paper Co., 228 La. 462, 82 So.2d 765 (1955). While complete fencing of the area claimed by acquisitive title has never been required, the jurisprudence of the state does require that the markings of the boundaries whether natural or artificial, must be of such a quality as to give . “definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed and to fix with certainty the boundaries or limits thereof.” Hill v. Richey, cited supra at 221 La. 422, and 59 So.2d 440. The map adopted as Exhibit # 1 indicates that Asylum Creek forms the boundary for a substantial portion of the property claimed. It is a creek flowing through the town of Jackson and could hardly form notice to the public of a boundary without other signs or indicia of ownership. There is no evidence to indicate that plaintiff has ever claimed Asylum Creek as a boundary to her alleged property.
The only evidence as to fencing by plaintiff or her husband is vacillating testimony by the plaintiff that they had a small enclosure for cows and/or pigs, and one *361 for a small garden. There was never any fencing of the entire area; never any fencing along Asylum Creek; no fencing of the garage or car lot; and no fencing at all since 1965. Charter Street, which is the main thoroughfare of Jackson and also Louisiana Highway # 10, runs through the property claimed. Any fencing of the whole tract would have been an obstruction to this highway. Nor was there ever any fencing on either side of the highway. We find nothing in the record to substantiate public notice of boundaries which we consider sacramental to the establishment of acquisitive ownership by possession.
Even if the proper parties had been joined in this suit, and even if plaintiff had been successful in proving her possession under the title of ownership, that this possession was public and unequivocal, and that it was preserved by external and public boundaries, her claims would still have to be rejected, because she has completely failed to establish “continuous and uninterrupted” possession “during all of the time,” as required by C.C. Art. 3500. Amidst confused and often contradictory testimony plaintiff has alleged the following acts of possession:
(1) Calves on the property in 1934 and 1935, maybe from 1933 and at “various times.”
(2) Pigs on the property starting in 1933, but this testimony was later changed by plaintiff to a statement that she did not know how long after 1935 it was before her husband put pigs on the place.
(3) A garden in 1934 or 1935, after the calves were sold, which garden was continued, but the last garden plaintiff had was in 1953 or 1954, according to one statement. She testified at another juncture that she had a garden until 1965, but that she had not had a garden too many times during her husband’s lifetime. The garden was located variously “where that point is,” apparently at the extreme eastern end of the property, and, according to subsequent testimony “way off up on the hill.”
(4) Timber, which was cut in 1948, later changed to' 1949, and then to 1950. A pulpwood cutting was made in 1970 and 1971; and a sale of timber to Paul Odom was made in 1965, according to plaintiff, but Mr. Odom testified that the only timber he had bought from plaintiff was a small amount purchased over 20 years before. Mrs. Palmer testified later that she had sold timber only twice, and that Matt Palmer, her brother-in-law had sold timber for her both times, but his death occurred in 1957, prior to the last timber cutting related by Mrs. Palmer. Her testimony as to the price paid for the timber was equally confused and un-definitive.
(5) Isolated sales of pine straw, red clay, and the bulldozing of a hillside were asserted, also, as acts of possession by the plaintiff, but by testimony which was too confusing for credence.
None of plaintiff’s testimony about these various and sundry acts of possession was corroborated by the numerous other witnesses in the case. In fact it was actively disputed. The garage and car lot of Lot 1 seems to have been the most continuous act of possession, but this was taken over by Mathew Palmer after the death of his brother, Louis Palmer, in 1942. As pointed out above, Mathew Palmer’s possession of Lot 1 was certainly an interruption to plaintiff’s alleged possession and tended to make plaintiff’s possession equivocal in the eyes of the public. Furthermore the boundaries of the garage and car lot were never established with the sufficiency necessary to constitute a basis for acquisitive possession.
Plaintiff admitted that she had never paid any taxes on any of the property *362 claimed and that it was not assessed to her or to her husband. There are no civil acts of possession in this record, and only the most intermittent, discontinuous physical acts at sporadic times, intervals, and places were reflected within the confines of the property claimed. Defendants have testified that these acts were tolerated as mere indulgence extended to friends who had been kind to members of their family at various times in the past.
We find that the decision of the trial court in rejecting the demands of the plaintiff is correct and amply supported by the record.
For the reasons assigned the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.