GUIDRY, Judge.
This is a possessory action.
The record reflects that plaintiffs and defendant own adjoining parcels of land in St. Martin Parish, Louisiana, both of which are bounded west by Louisiana Highway 347 and extend east to a line 40 arpents from Bayou Teche.[1] Defendant’s property, hereinafter referred to as the Hub City tract, contains 61 acres and is located immediately north of plaintiffs’ land. That por *591 tion of plaintiffs’ land located east of highway 347, hereafter referred to as the Las-seigne tract, contains approximately 122 acres. Both tracts of land are traversed near their eastern extremities by a railroad track which runs generally north and south. For many years prior to the institution of this suit both properties were used for the cultivation of sugar cane. The properties have never been separated by a fence, however, at least since the early 1930s a field drainage ditch, which runs generally east and west and which is located in close proximity to the common boundary of such properties, has remained in existence in the same place.[2]
Defendant acquired the Hub City tract on April 6, 1978. Thereafter, defendant caused a survey to be made of this property preparatory to converting the land into a residential subdivision. The instant controversy arose when defendant, in furtherance of its plan for development of the Hub City tract, land leveled the field ditch and a strip of ground south thereof. In effect, defendant in its operation incorporated the ditch and five or six rows of sugar cane located south of the ditch in its subdivision development. According to the record, this event occurred on or about June 12, 1979. This suit was filed on July 16, 1979.
The trial court rendered judgment in favor of plaintiffs, recognizing their right to possession of the disputed area, the northern limits of which are defined in the trial court’s judgment as the field ditch, formerly existing between the property of Clerfe Potier and Anaclet Lasseigne, as located on the plat of Clarence Thibodeaux (Defendant’s Ex. 1) and projected on the west to Louisiana Highway 347 and on the east to the Missouri Pacific Railroad right of way. In addition plaintiff was awarded damages in the sum of $1500.00.
Both plaintiffs and defendant have appealed. Defendant assigns as error the trial court’s conclusion that plaintiffs had such possession of the disputed strip sufficient to maintain the possessory action. Additionally, defendant urges that the trial court erred, as a matter of law, in concluding that the field ditch was a visible bound sufficient to delineate the extent of plaintiffs’ possession. On appeal plaintiffs question only the quantum of the trial court’s award of damages.
We first address defendant-appellant’s specifications of error.
The possessory action is one brought by the possessor of immovable property or of a real right to be maintained in his possession of the property or enjoyment of the right when his possession has been disturbed. (LSA-C.C.P. Article 3655). In the possessory action, the ownership or title of the parties to the immovable property or real right is not at issue. (LSA-C.C.P. Article 3661). A plaintiff in a possessory action is one who possesses for himself. A predial lessee possesses for his lessor and not for himself. (LSA-C.C.P. Articles 3656 and 3660). One has possession of immovable property sufficient to maintain the pos-sessory action when he has corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper. (LSA-C.C.P. Article 3660). LSA-C.C.P. Article 3658 provides that in order to maintain the possessory action the possessor must allege and prove the following:

(1) He had possession of the immovable property or real right at the time the disturbance occurred;

(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;

(3) The disturbance was one in fact or in law, as defined in Article 3659; and

(4) The possessory action was instituted within a year of the disturbance.”

*592 In the recent case of Harper v. Willis, 383 So.2d 1299 (La.App. 3rd Cir. 1980) writ denied, 390 So.2d 202 (La.), we discussed the possession necessary for maintenance of the possessory action. In that case we stated:

“. . .LSA-C.C. art. 3436 requires two distinct elements for a person to acquire possession: (1) the intention of possessing as owner and (2) the corporeal possession of the thing. Our jurisprudence usually states that the term ‘corporeal possession’ means the actual, physical, open, public, unequivocal, continuous, and uninterrupted possession of property with the intent of possessing it as owner. Gerrold v. Barnhart, 128 La. 1099, 55 So. 688 (1911); Wm. T. Burton Industries, Inc. v. McDonald, supra [346 So.2d 1333 (La.App.)], Succession of Kemp v. Robertson, 316 So.2d 919 (La.App. 1st Cir. 1975), writ denied, 320 So.2d 906.

It is well established that the ‘corporeal possession’ required to bring a possessory action is identical to that required for acquisitive prescription of thirty years. LSA-C.C. articles 3499-3505; Hill v. Richey, et al., 221 La. 402, 59 So.2d 434 (La.1952); Johnson v. Merritt, 131 So.2d 562 (La.App. 2nd Cir. 1961); Case v. Jeanerette Lumber & Shingle Company, Inc., 79 So.2d 650 (La.App. 1st Cir. 1955); Broussard v. Motty, 174 So.2d 246 (La.App. 3rd Cir. 1965); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975); Norton v. Addie, 337 So.2d 432 (La.1976); Wagley v. Cross, 347 So.2d 859 (La.App. 3rd Cir. 1977).

It is clear that the intent to possess as owner has to do with the subjective intent of one who professes to possess and does not mean that the possessor must pretend to have valid title rights. The possessor may actually have title, but in the possessory action that factor is significant only in determining intent. The intent may exist without title to the knowledge of the possessor, for as shown above, even our codes permit a person in bad faith or a usurper to maintain the possessory action. LSA-C.C. arts. 3450, 3452, and 3454 and LSA-C.C.P. art. 3660. In as much as the corporeal possession required as a predicate to a possessory action is the same as that required for acquisitive prescription of 30 years, the corporeal possession must be open and notorious and adverse or hostile to the true owner and everyone else.”

We find no merit in defendant’s contention that the field ditch was not a visible bound sufficient to delineate the extent of plaintiffs’ possession. It is well settled that a ditch may be sufficient to serve as a visible bound delineating the extent of possession. Coleman v. Henderson, 353 So.2d 1091 (La.App. 2nd Cir. 1977) and cases therein cited. As set forth in Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952):

“What the court means by ‘enclosures’, as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means ‘enclosed only by a fence or wall’ would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases. ”

Defendant’s suggestion that the field ditch in question was too insignificant to serve as a visible bound belies the fact that for almost 50 years the ditch actually served as the division line between the two properties.
The record in this case reflects that the field drainage ditch, located as aforestated in close proximity to the common boundary of plaintiffs’ and defendant’s properties, was constructed prior to the early 1930s and was maintained in the same place until filled in by defendant on or about June 12, 1979. During this entire period of time both properties were cultivated in sugar *593 cane by the respective owners thereof or their tenants, with the field ditch being accepted by both owners and tenants as the dividing line. There is no testimony in the record to the contrary, except that of the brother of plaintiffs, Clet Lasseigne, who, following his late father’s retirement in the early 1960s, began to farm the Lasseigne tract as a lessee and, who during the approximate same period also farmed the Hub City tract under a share crop arrangement. Clet Lasseigne testified, contrary to his sisters and Charles Broussard, a former tenant on the Hub City tract, that he was aware, as was his late father, that the drainage ditch was not a boundary ditch. The learned trial judge resolved this conflict in the evidence favorable to the plaintiffs concluding that at the time of the disturbance plaintiffs were in corporeal possession of the disputed strip with the intention of possessing as owners. In this connection the trial judge stated in his oral reasons for judgment as follows:

“The evidence overwhelmingly establishes to my satisfaction possession up to the field ditch that we have heard so much about and a line extended from it in each direction from time immemorial, for all practical purposes, actual physical, corporeal possession by farming and harvesting crops. The disturbance is admitted. There’s no question that in fact a portion of the area south of the field ditch was in fact incorporated by the defendant into its property and rows were done away with and the ditch done away with. We have no problem with that. The question is the character of the possession. The plaintiff must possess as owner.

Alright, the plaintiffs in this case are the three daughters of, for our purposes the original owners of the property. They are the ones claiming that their possession has been disturbed. All of the evidence in this case shows that the activity conducted on this tract of land by the ancestors of the present owners, that is, by their father, with the single exception of the testimony of Mr. Clet Lasseigne, was as owner. He did all of those things that an owner does. Now the question, of course, is, what was the character of the possession at the time of and for the year previous to the disturbance, which of course was long after Mr. Lasseigne, Sr., was deceased. Now, the water is muddied by the fact that we have the same tenant on both tracts of land. If we had separate tenants it would probably be easier. But Mr. Clet Lasseigne has testified that he was aware and that his father before him was aware that the drainage ditch was not a boundary. It was, however accepted by the previous tenant on the Potier property,[3] because he so testified. It was accepted by Mr. Lasseigne, Sr., by all evidence that has been introduced except the testimony of his son; and it was at least accepted even by Mr. Clet Lasseigne, Jr. — is that correct, his full name — for purposes of dividing the proceeds of the crops grown by him on the respective tracts except to the extent that he says that he had a gentleman’s agreement with Mr. Potier to give him sone (sic) heat-treated seed cane or an occasional load of cane to make up for the fact that maybe some of the cane was from his property.
To the contrary of that, we have the testimony of Mr. Thibodeaux[4] to the effect that Mr. Lasseigne had informed him that the ditch had been established as a dividing line and that from the general tenor of the conversation, he considered it to be not a firmly fixed ownership line, but a basis on which the crop was divided. This is corroborative of Mr. Lasseigne’s testimony in one respect and contradictory in another. I am satisfied that even if Mr. Lasseigne’s testimony is accepted, that is, that there was a gentlemen’s agreement between himself and Mr. Potier to return an occasional amount of cane, that this was an agreement just exactly as he said, between himself and Mr. Potier, not an agreement made by *594 him as agent for the owners of the property, and therefore cannot possibly bind the owners of the property, the plaintiffs in this case, since their entire testimony has been to the contrary, that they were never aware of any arrangement other than the fact that everything south of the ditch belonged to them and their father before them, and north of the ditch belonged to Mr. Potier.

Accordingly, I am going to find for the plaintiff (sic) in this case.”

We find that the record in this case clearly supports the trial court’s conclusion that plaintiffs have established by competent proof all requisites for maintenance of the possessory action and therefore, the judgment of the trial court maintaining plaintiffs in possession of the disputed strip will be affirmed.
Plaintiffs have appealed asserting that the damages awarded are inadequate. In their petition plaintiffs seek to recover both special and general damages. The trial court found the evidence with regard to the cost of restoring the ditch and land to be highly speculative and the evidence as to plaintiffs’ emotional suffering to be very unimpressive. The trial court allowed plaintiffs the sum of $1500.00 as damages. Our review of the record reveals no clear error or abuse of discretion by the trial court in this award.
For the reasons assigned the judgment appealed from is affirmed. Costs of this appeal are assessed one-half (V2) to plaintiffs-appellants and one-half (V2) to defendant-appellant.
AFFIRMED.

. At trial, evidence of ownership was introduced for the limited purposes allowed by LSA-C.C.P. Article 3661.

. The field ditch referred to does not extend across the entire width of the adjoining properties. Rather, the ditch commences at a point some distance east of highway 347 and extends east to a point a short distance west of the railroad track.

. Hub City tract.

. The Civil Engineer who surveyed the Hub City tract.