391 So.2d 1126 (1980)
Olezime CHERAMIE et al.
v.
Alidore CHERAMIE et al.
Nos. 67120, 67126.
Supreme Court of Louisiana.
November 10, 1980.
*1127 Greenberg & Dallam, Nathan Greenberg, Gretna, for defendant-applicant in 67120 and for defendant-respondent in 67126.
Edward T. Diaz, Diaz & Cheramie, Golden Meadow, for plaintiff-applicant in 67126 and for respondent in 67120.
Carlton J. Cheramie, Diaz & Cheramie, Golden Meadow, David Landry, Deramee & Deramee, Thibodaux, Charles A. O'Niell, Jr., New Orleans, Maurice J. Serpas, Galliano, George J. Ledet, Jr., Laplante & Ledet, Cut Off, C. Ellis Henican, Henican, James & Cleveland, New Orleans, for respondents in both cases.
CALOGERO, Justice.
In this petitory action plaintiffs assert ownership of a tract of land possessed by defendants.[1] The district court rendered judgment in favor of defendants, holding that plaintiffs failed to prove valid record title, good against the world. The trial court also sustained defendants' pleas of five year liberative[2] and thirty year acquisitive *1128 prescription.[3] The Court of Appeal, 380 So.2d 166, affirmed the holding of the trial court in all respects.
Two considerations prompted our grant of this writ: (1) the lower courts' assessment of plaintiffs' title appeared incorrect and (2) if plaintiffs did have good title, the possession of the alleged usufructuary would seem to have accrued to the benefit of plaintiffs/naked owners rather than to defendants/possessors.
Our study of the record leads us to conclude that the Court of Appeal was correct on the issue of acquisitive prescription. The supposed usufructuary did not participate in the notarial act creating the usufruct nor did she later corporeally possess the land was subject to the usufruct. Defendants openly possessed the contested tract of land for more than thirty years, free of any usufructuary interest on the land which might have interfered with their possession as owners. We therefore find it unnecessary to examine the Court of Appeal holding that plaintiffs are not the record owners of the land.
This suit began as a claim of ownership by Olezime Cheramie to a tract of land claimed and possessed by his brothers Alidore and Ozeme. Plaintiffs claimed all the land possessed by Alidore and presumably a small, northernmost, portion of that possessed by Ozeme. Olezime bases his claim to the property on a partition executed in 1907 by all eight children of Olucien Cheramie, including the said Olezime. Plaintiffs' petition describes the contested property as:
"A CERTAIN TRACT OF LAND, situated in the Parish of Lafourche, Louisiana, on the left descending bank of Bayou Lafourche, about 55 miles below the Town of Thibodaux, near the Town of Golden Meadow, Louisiana, measuring a front of two hundred, ninety-three and 44/100 (293.44 ft.) feet on the left descending bank of said bayou by a depth of forty arpents between parallel lines, comprised within and being the Northernmost one quarter of Section 23, Township 19 South, Range 22 East, Southeastern Land District of Louisiana, West of the Mississippi River; said tract of land being bounded in the front or on the West by said Bayou Lafourche, above, or on the North by the Northern boundary line of said Section 23, in the rear, or on the East by the Eastern boundary line of said Section 23, and bounded below, or on the South, for a distance of 1000 feet by property of Eugene Cheramie, and for the remainder of its depth by property of Alidore Cheramie; together with all buildings and improvements thereon and all rights, ways, privileges and servitudes thereunto belonging, or in any wise appertaining." (Emphasis provided.)
Olucien Cheramie, father of Olezime, Alidore, Ozeme and five other children, acquired the contested tract of land as part of a larger tract purchased from Martial Orgeron in 1866, at which time Olucien was unmarried. The act of sale for that purchase, presumably 158.75 acres lying fully within Section 23, Township 19 South, Range 22 East, contains the following property description:
"A certain tract of land situated in the Parish of Lafourche, on the left descending bank of Bayou Lafourche bounded above by a tract of land belonging to Gratien Thibodaux, and below by a tract of land belonging to Charles Orgeron with all the buildings and improvements thereon.
"Said land has been acquired by the vendor from the State of Louisiana and is described as being Lot Number Twenty-three (23) in Township Number Nineteen South of Range Number Twenty-two East, containing one hundred and fifty-eight acres and Seventy-five hundredths of an acre."
Later, after his marriage to Aglae Hebert in 1869, Olucien purchased a second tract of land along Bayou Lafourche. This property is located in section 22, below the first tract, and is not directly involved in this litigation.
*1129 Olucien and Aglae had eight children: Olezime, Alidore, Ozeme, Theodore, Joseph Ovide, Julien, Olucien, Jr., and Adolphine. Olucien died intestate in 1882 or 1883, survived by Aglae and their eight children.
On July 24, 1907, the Cheramies executed three notarial acts before Chas. S. Larkin, notary public: (1) Aglae sold to her eight children a stated one-half interest in the two tracts of land; (2) the eight children partitioned the two tracts among themselves with Joseph Ovide, Julien, Olucien, Jr., and Adolphine each receiving one of four parcels created from the lower tract, and Olezime, Alidore, Ozeme and Theodore each being allotted one of the four parcels created from the upper tract; (3) each of the eight children, with respect to the parcel he/she respectively received in the partition, granted Aglae a usufruct over that parcel (Aglae was not a party to this notarial act, nor to any later notarial act, accepting the usufruct).
The subject of this suit is the upper tract, more particularly the parcels allotted to Olezime, Alidore and Ozeme. The partition divided the upper tract into four essentially rectangular parcels, each approximately one acre front on Bayou Lafourche by a depth of 40 acres. The upper parcel, described in the partition as bounded above by land formerly belonging to the estate of Gratien Thibodaux and below by the parcel of Alidore, was allotted to Olezime. The second parcel, described as bounded above by the parcel of Olezime and below by that of Ozeme, was allotted to Alidore. The third parcel, described as bounded above by the parcel of Alidore and below by the parcel of Theodore, was allotted to Ozeme. Theodore received the fourth parcel, described as bounded above by the parcel of Ozeme and below by land belonging formerly to Francois Doucet and now owned by Francois Deramee. The partition describes the entirety of the upper tract in the following manner:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left bank of Bayou Lafourche at about Fifty five miles below the Town of Thibodeaux, measuring Four acres more or less front on Said Bayou Lafourche by Forty Acres in depth, Bounded above by land formerly belonging to Estate of Gratien Thibodeaux and now owned by Francois Deramee and below by other land of Francois Deramee and formerly to Francois Doucet together with the buildings and improvements thereon."
At the time of the partition, Olezime was already living on the parcel of land thought to be allotted to him. Also at the time of the partition, Alidore and Ozeme, with whom their mother Aglae made her home, lived in section 22 on land which the partition allotted to Olucien, Jr. Several years after the partition, Alidore, Ozeme and Aglae moved onto the portion of land which they believed had been allotted to Ozeme, but south of the land which plaintiffs claim. By the time of this trial, Aglae and Ozeme had died, but Alidore continued to live there. The land on which Olezime lived and continued to live was later determined to be in section 24 rather than in section 23.
In 1934, Nolan Tomplain, whose ancestor in title was Gratien Thibodaux, brought suit against Olezime asking the court to fix the boundary between their tracts of land. In that suit it was determined that the tract Olezime possessed was fully within section 24, with the record title in Gratien Thibodaux and his assigns. Olezime testified that the northern boundary of his property, which he claimed to be the southern boundary of Thibodaux's, was marked by a canal and a fence. Olezime stated that he and his father before him had occupied the land for more than 50 years. The judgment in that suit, rendered in 1936, found that Olezime had prescriptive title to the land, having possessed all but the rear portion of the tract within section 24 for more than thirty years.
Thus, based upon thirty year acquisitive prescription, Olezime was successful in retaining the property he had occupied both before and after the 1907 partition. Although he was alerted by the Tomplain litigation that he might lay claim to the Alidore tract, Olezime did not bring the *1130 instant suit until 1951, seventeen years after the commencement of the Tomplain suit. Spurred by the discovery of oil on the property in the late 1940's, Olezime claimed that the partition of 1907 made him the owner of the upper quarter of section 23, the northernmost of the property to which his father, Olucien, apparently had title.
As indicated at the beginning of this opinion, our resolution of the instant litigation turns upon a determination that defendants acquired the disputed property by thirty year acquisitive prescription, that is, by open, unequivocal continuous possession as owner of the contested tract of land.
Trial testimony established that fences were erected to separate the individual parcels of land thought to have been allotted to Olezime, Alidore, Ozeme and Theodore. These boundaries were also marked by drainage canals. Farming occurred on the portion of the land which would support crops. Olezime and Theodore were already farming their parcels before the partition and Alidore and Ozeme began farming on their tracts by 1911. Alidore hired people to farm his land, while Ozeme worked much of his by himself. Witnesses who had worked for Alidore and Ozeme testified that they had planted crops and helped keep drainage canals clean. These witnesses said that, although they saw Olezime working in his fields, he never suggested that they were working the wrong land. Both Alidore and Ozeme sold lots off their tracts for homesites. The buyers testified that Olezime did not protest when they built homes on these lands.
Plaintiffs strongly protest that defendants' possession of the unplanted portion of the tract, located to the rear of the cultivated area, was insufficient to sustain a plea of thirty year prescription. In this regard, plaintiffs specifically note the lack of fences surrounding that area. Although fences or walls were an early jurisprudential requirement to show possession, in Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952), we recognized that the necessity of a fence or wall is not justified or supported by the Civil Code. We further observed that corporeal possession necessary to support prescription is governed by the nature of the land and the use to which the land is put.
Witnesses at trial described this rear acreage as swamp, frequently covered by two or more feet of water. Alidore and, with his permission, other family members grazed cattle on this land. Alidore built, or had built, a fence to keep the cattle from straying into the cultivated portion of his land and destroying his crops. All the witnesses at trial, except Olezime, testified that the family discussed the location of the various portions of land and that Alidore was known to be possessing the tract which plaintiffs now claim. Even Olezime's son testified to family discussions regarding the land of the brothers. Drainage canals marked the northern and southern extent of the front portion for more than 30 of the 40 arpents, dividing each brother's land from the next and keeping the land dry enough for cultivation. Alidore testified that the canal separating his land from Olezime's ran back 38 arpents from the bayou. The rear portion, directly in line with that marked by the fences and canals, was recognized to be possessed by the brother possessing the land fronting on the bayou. Those allowing cattle to graze behind Alidore's front acreage did so with his permission and only those who had permission grazed cattle in that location. Olezime did not keep cows on this land.
Since 1911 Olezime was well aware that Alidore was possessing the land which he now seeks to claim as his. Moreover, the family and neighbors also knew that Alidore was in possession of this land. Plaintiffs are all members of the Cheramie family and all lived in the vicinity of the land they are claiming. Thus, the only adverse claimants to defendants' acquisitive prescription had notice that the land had been or was being occupied for forty years, but chose to do nothing about it during this long period of time. Even after they knew or suspected, by virtue of the Tomplain suit, that they were in the wrong location, they still did not bring a petitory action for many years.
*1131 Plaintiffs further contend that, regardless of the nature of possession by defendants, the time for acquisitive prescription could not begin to run until Aglae died in 1935 because her possession of the property as usufructuary accrued to the benefit of the true naked owners, namely plaintiffs. For the reasons stated below, we determine that the tract claimed by plaintiffs was not burdened by a usufruct. Aglae did not accept the usufruct in the notarial act in 1907 by which the children attempted to grant one to her, nor did she accept the usufruct in a later notarial act. Louisiana Civil Code article 1540 provides:
"A donation inter vivos shall be binding on the donor, and shall produce effect only from the day of its being accepted in precise terms.
"The acceptance may be made during the lifetime of the donor by a posterior and authentic act, but in that case the donation shall have effect, with regard to the donor, only from the day of his being notified of the act establishing that acceptance."
Further Aglae did not accept the usufruct by corporeal possession.[4]
It is clear that the land in question, in fact all of the northern tract from which the four parcels were carved, was the separate property of Olucien Cheramie, having been purchased approximately three years before his marriage to Aglae Hebert. Consequently, Aglae could not "sell" her interest in this property because she had no such interest, not even the usufruct of a surviving widow in community. Therefore, the first of the three notarial acts executed on July 24, 1907, did not effect a transfer of ownership with respect to the land sought by plaintiffs in the instant action. There could be no sale because Aglae had nothing to sell.
The second of the notarial acts of July 24, 1907, partitioned the land among the eight Cheramie children. Each child received a particular parcel of land as his or her own. The act begins with a declaration that the parties no longer wish to be owners in indivision. One son testified at trial that, with the exception of Alidore and Ozeme, each person was already living on or using the land received by that individual in the partition.
The grant of the usufruct to Aglae was by the children as owners in a divided state. Aglae could not, therefore, hold a single usufruct over all the land for all the children as plaintiffs contend. Rather, Aglae was granted eight separate usufructs over eight separate parcels of land by the final act passed on July 24, 1907. As stated previously, Aglae was not a party to this act and did not later formally accept the donation as required by La.Civ.Code art. 1540.
We must therefore examine the evidence to determine whether Algae accepted the donation of the usufruct by corporeal possession, the alternative method of acceptance provided by La.Civ.Code art. 1541. At the time of the sale, partition and donation of the usufruct, Aglae was living with Alidore and Ozeme on the lower tract of land which is not involved in this suit. Their house was on land which was allotted to Olucien, Jr., in the partition. They continued to live in that location until approximately 1925 at which time the brothers built a house on the parcel allotted to Ozeme and the three moved into it. Aglae lived with these two sons because neither of them was married. She cooked and kept house for them when she was well enough to do so. In Aglae's later years, these sons hired a woman to help with the housework and to do the cooking when Aglae could not.
Olezime alone testified that the children were to give their mother "$10.00 a year for her share." Although insisting that his mother had a usufruct over the land, Olezime admitted that he never paid his mother the $10.00 agreed upon to "hold her rights." He further testified that he was not aware *1132 that any of the other children paid Aglae any money. Rather, he said that she was supported by the ones "she did the work for." Theodore, another brother, testified that he gave his mother "what she happened to need because I knew that it was my mother." He confirmed that Olezime did not give anything to Aglae. He also stated that the other children did not contribute to her support.
Olezime contended that Alidore served as his mother's agent when working the land, hiring workers and buying merchandise. However, witnesses at the trial testified that they had worked for Alidore, not for his mother. The people who helped with planting the crops dealt only with Alidore. Merchants testified that Alidore did the purchasing and paid the bills in his own name.
Aglae did not personally work in the fields. She did not raise chickens in the area adjacent to the house. She did not even have a kitchen garden. Any of these acts might have been consistent with corporeal possession of the property, but Aglae did none of them.
Finally, we note that on March 6, 1934, Alidore sold to Remis Cheramie a piece of the land which Olezime claims. Aglae was not a party to this sale. The act of sale contains no reference to a usufruct in favor of Aglae. Such activity is inconsistent with the existence of a usufruct.
A usufructuary is entitled to all the profits, natural and civil fruits, as well as the other advantages of use of a corporeal object. Natural and civil fruits belong to the usufructuary. Aglae did not reap these. In this case, we find no evidence that Aglae received the profits from the farming, cattle raising and trapping which were done on the contested land. The fact that she was housed, clothed and fed by the sons, particularly where the house was not upon the land in contest, is insufficient to fulfill the enjoyment and use elements of usufruct.
The instant case is clearly distinguishable from Cotton v. Washburn, 228 La. 832, 84 So.2d 208 (1955), in which we found that there had been acceptance of the donation of an immovable by corporeal possession. In Cotton, the husband, just prior to his marriage, purchased property in his name and that of his wife-to-be. Following the marriage, the couple moved into the house and resided there throughout the duration of the marriage. When the couple divorced, the wife sought to have the house included in the partition inventory. The husband objected that it was purchased with his separate funds and that, if it be considered a donation, the wife had never formally accepted. We held that a donation had taken place and the wife's moving into the house and residing there constituted an act of corporeal possession. Aglae never moved onto the land which Alidore thought he had received in the partition. She and her sons moved onto the tract thought to have been allotted to Ozeme, but not until almost twenty years after the notarial acts of July 24, 1907. Then Aglae merely followed the sons with whom she made her home when they moved onto a portion of Ozeme's tract not at issue here.
The record is barren of evidence supporting acceptance of the usufruct by Aglae. Consequently, we hold that the contested property was not burdened by a usufruct. Further, we find that defendants possessed the land for more than 30 years. La.Civ. Code arts. 3475, 3499. They possessed in the character of owners and were known as owners throughout the community. La.Civ. Code art. 3500. Finally, they possessed the full extent of the land as described in the partition of 1907. La.Civ.Code art. 3503.

Decree
For the foregoing reasons, the judgments of the district court and that of the Court of Appeal are affirmed. Costs of this appeal to be paid by plaintiffs/relators.
AFFIRMED.
NOTES
[1] This suit was filed in 1951 by nine plaintiffs against forty-five defendants. Trial was held in 1956 and 1957 with the trial judge taking the matter under advisement at the conclusion of testimony. That judge left office many years later without rendering an opinion. Through the years the number of litigants has increased, with substitution of parties prompted by the death of and transfers by the original parties. In 1979 the district court rendered the judgment outlined above.
[2] In a partition, the coheirs warrant to each other the property falling to each against disturbance and eviction from a cause arising before the partition. La.Civ.Code art. 1384. This action of warranty prescribes in five years and the time commences to run from the day of the eviction. La.Civ.Code art. 1396. Actions for the rescission of a partition and the guarantee of the portion prescribe in five years. La.Civ. Code art. 3542.
[3] A possessor may acquire title to immovable property by thirty years possession which is public, continuous and in the character of an owner. La.Civ.Code arts. 3475, 3499, 3500.
[4] La.Civ.Code art. 1541 provides that a donation not accepted by an authentic act is nevertheless valid if the donee has been put by the donor into corporeal possession of the effects given.