COVINGTON, Chief Judge.
Plaintiffs appeal the judgment of the trial court directing a verdict in defendants’ favor, dismissing their suit against Dow Chemical Company and the State of Louisiana. Plaintiffs filed a petitory action, claiming ownership of two tracts of land situated in Iberville and St. Martin Parishes amounting to hundreds of acres by virtue of thirty years’ acquisitive prescription. Trial was had on the issue of ownership of only one of the tracts of land, situated in Iberville Parish. At the close of plaintiffs’ presentation, the trial judge granted a joint motion by Dow and the State[1] for a directed verdict dismissing plaintiffs’ claims on the grounds that plaintiffs’ activities and occupation of the land did not constitute sufficient notice of accrual of plaintiffs’ *1278 alleged 30 years of adverse possession to defendant Dow, the owner of record at the time. Because we find this decision was erroneous, we reverse and remand for further proceedings.
The land in question is located along the Whiskey Bay Pilot Channel in the Atchafa-laya River Basin, and is a combination of marsh, swamp, forest, and dredge spoil which resulted from the construction of the Pilot Channel by the U.S. Army Corps of Engineers prior to 1936. The testimony of plaintiff Dewey Patín and his witnesses was unrebutted that in 1936 he moved a house by raft onto some high ground built up by the dredging near the mouth of a body of water called Pat’s Throat, where it empties from the east into the bottom of the Channel. Due to erosion and flooding in the area, the house was moved to three different locations through the years and even rebuilt, but was nevertheless maintained from 1936 through 1973 in the same general vicinity as the original site. The tract is a roughly wedge-shaped, three-sided area, bounded on the west-southwest by the Whiskey Bay Pilot Channel, on the north by 3-strand barbed wire fences which plaintiff and his family maintained, interspersed with slews and bayous, and on the east-southeast by two connecting bodies of water, Werner Lake and Pat’s Throat. The testimony established that plaintiff and his family resided there; raised cattle, vegetables, hogs, ducks, sheep, chickens, and a few horses; hunted, trapped, and fished commercially; maintained roadways, both vehicular and marine (“fish roads”); granted permission to others who wanted to hunt and fish in the area; and ran off trespassers. Plaintiff estimated that at one time, his herd of cattle numbered approximately 75 head. Mr. Patín granted permission, apparently back in 1944, for a pulpwood operation in exchange for the building of a boat ramp near his house and some firewood.
At some point in the 1950’s, Dow, the alleged record title holder at that time, attempted to get Mr. Patín to sign some papers; whether these were a lease is unclear. Mr. Patín refused, and although signs were placed by Dow on the property first in 1973 and later in 1978, these were taken down by the Patín family as soon as they found them up.
A pipeline was built at some point in the 1970’s to which plaintiff agreed in exchange for the pipeline being covered by a road so that he could reach his house by truck. Thereafter the road or right-of-way was maintained by Mr. Patín, his son, grandson, and Bobby Miller, who had built a hunting camp on the northern part of the property with plaintiff’s permission.
Mr. Patín testified that when he moved his house and family onto this property in 1936, it was because he knew no one else was claiming it since it had just been created by the dredging of the Channel. He never paid rent to anyone for his possession of the land, and particularly not to Dow or the lumber company that allegedly preceded Dow in the chain of title.
MOTION FOR DIRECTED VERDICT
Under LSA-C.C.P. art. 1810 a trial judge may grant a motion for a directed verdict. The article provides as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
We have agreed previously with our brethren in the Third Circuit that as the source of our article 1810 is the Federal Rules of Civil Procedure, the correct standard to apply in considering such a motion is the federal jurisprudential one, delineated in Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969):
On motions for directed verdict and for judgment notwithstanding the verdict *1279 the Court should consider all of the evidence-not just that evidence which supports the non-mover’s case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
See Tabor v. Doctors Memorial Hospital, 501 So.2d 243 (La.App. 1 Cir.1986).
We have thoroughly reviewed plaintiffs’ evidence in the light most favorable to plaintiffs, and drawn all reasonable inferences most favorable to them, making no evaluations of credibility since these have no place in a decision on a motion for directed verdict. Campbell v. Mouton, 373 So.2d 237 (La.App. 3 Cir.1979). We are convinced that reasonable men on the jury could have concluded otherwise on the issue of notice of plaintiffs’ possession to Dow.
As the plaintiffs were claiming only partial possession at time of trial in this petitory action, they had the burden of proving that they have acquired ownership by acquisitive prescription (LSA-C.C.P. art. 3653) through thirty years of possession (LSA-C.C. arts. 3475 and 3486). The type of possession required to commence the running of prescription is the same as that required to bring a possessory action. Norton v. Addie, 337 So.2d 432 (La.1976). Possession without title extends only to that which has been actually possessed. Although fences or walls were an early jurisprudential requirement to show possession, the necessity of a fence or wall is not justified or supported by the Civil Code. The corporeal possession necessary to support prescription is governed by the nature of the land and the use to which the land is put. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). Unfenced swamp land used to graze cattle behind other cultivated land marked by drainage canals has been held to be sufficiently delineated and possessed for thirty year acquisitive prescription. Cheramie v. Cheramie, 391 So.2d 1126 (La.1980).
The testimony was uncontradicted regarding all of the plaintiffs’ various activities on the property since 1936 up to and through 1973, a period in excess of 30 years. Three witnesses other than family members verified the existence of plaintiffs’ fences and natural boundaries (i.e., the various waterways relied upon by plaintiffs) and Mr. Patin’s acts of dominion over the tract in question, as well as plaintiffs’ open assertion of ownership. Patín testified about Dow’s vain attempts to have him sign “papers” in the early fifties, as well as the signs that were posted by Dow and removed by him and his family as soon as they were put up in the seventies.' The jury could have reasonably concluded from this testimony, corroborated by other witnesses, that plaintiffs’ acts of possession did indeed provide Dow with sufficient notice of their adverse claim. In addition was plaintiff’s uncontradicted testimony about his friendly relations with Dow’s “land man” until 1973, Percy Wisdom, Sr., who apparently respected plaintiffs’ claim and actually visited with Mr. Patín from time to time.
Thus, reasonable persons on the jury could have found in favor of plaintiffs. The motion for a directed verdict on behalf of defendants should not have been granted.
As the motion was granted at the close of plaintiffs’ evidence, it is necessary to remand this matter for a new trial. In view of Mr. Patin’s age at the time of trial (77 years) and his apparent health problems as evinced by the testimony, it would have been more prudent for the trial judge to have deferred her ruling until after the defendants had presented their evidence.
BIFURCATED TRIAL
We briefly dispose of plaintiffs’ contention that they should have been entitled *1280 to a jury trial on all issues, as the State was only an incidental party to the action. The State is the record title holder, according to its pleadings, of the naked interest in some of the property, admittedly acquired as such only in 1981. While we. recognize and appreciate plaintiffs’ argument that prescription accrued prior to that time against Dow and not the State [see, Wood v. Mayo, 240 La. 109, 121 So.2d 503 (1960) ], we nevertheless disagree with the argument that the present record owner of immovable property is only an incidental party to an action involving title to that property.
For these reasons, we reverse the judgment of the trial court directing a verdict in favor of defendants and dismissing plaintiffs’ claim to the following described immovable property:
A certain tract or parcel of land situated partially in Iberville Parish and partially in St. Martin Parish containing 750 acres, more or less, beginning at a point which said point of beginning is described as follows: beginning at a point in Iberville Parish in Section 36 of T-9-S, R-9-E, beginning at the midline of a Bayou known as “Pat’s Throat” and the eastern boundary of the Whiskey Bay Pilot Channel, proceed generally North following the meanders of Pat’s Throat to a main fork approximately 200’ South of the midline of said Section 36, then following the left fork in a northwesterly direction to the centerline of said Section 36. Thence due West following the mid-line of said Section 36 to the center point of said Section 36; thence North following the north-south midline to said Section 36, a distance of approximately ¼ of a mile to a continuation of the northwesterly fork of Pat’s Throat which is sometimes known as Warner’s [sic] Lake, thence following the southern or westerly boundary of said Lake a distance of approximately .30 of a mile to the northern boundary of said Section; thence continuing northwesterly following the southern or westerly boundary of Warner’s [sic] Lake to the midline of Section 27 of T-9-S, R-9-E; thence due West to the southwest comer of the East half of the northeast quarter of Section 33 of T-9-S, R-8-E; thence due North following the midline of the northeast quater [sic] of said Section 33 to the northern boundary of said Section 33; thence due West following the southern boundary of Section 31 of said Township and Range to the Eastern boundary of the Whiskey Bay Pilot Channel; thence southeasterly following the eastern boundary of Whiskey Bay Pilot Channel a distance of approximately 2 miles to the midline of Pat’s throat.
We remand this matter for a new trial. Costs of this appeal in the amount of $5,484.06 are assessed equally between the defendants.
REVERSED AND REMANDED.
FOIL and SAVOIE, JJ., dissent.

. The State notes correctly in its brief that under LSA-C.C.P. art. 1672(B), the judgment dismissing the non-jury trial as to it was one of involuntary dismissal, and not a directed verdict. However, we have not distinguished the two for the purposes of this opinion.