| ^WEIMER, J.
This is an appeal from a trial court judgment in a possessory action. Finding the trial court did not err, we affirm.
*533 BACKGROUND
On August 17, 1995, Beulah M. Poirrier filed a possessory action against Jimmie Aucoin, seeking to be restored to possession of real property located in Ascension Parish, as well as injunctive relief and damages. In her possessory action, Ms. Poirrier claimed she was in possession of certain immovable property acquired by act of partition with Norman J. Poirrier and Herman P. Poirrier dated September 28, 1961. She further alleged that on August 1, 1995, Mr. Aucoin entered the property in question and began knocking down trees and excavating dirt, all of which deprived her of the use and possession of the property.
Mr. Aucoin answered the petition, asserting that on July 27,1995, he had transferred the property where the excavation and clearing had taken place to Dale’s Dozer Service, Inc.[2] Mr. .Aucoin further alleged that prior to the transfer, he, Jimmie Aucoin, was in possession of the property and that Ms. Poirrier’s property description contained in her petition did not include the property in question.
Thereafter, Ms. Poirrier amended her petition to substitute Dale’s Dozer Service, Inc. as the defendant. She also amended the property description and included in the amended petition the following paragraph setting forth the boundaries for her property:
Said property occupied by petitioner as her home is more particularly described as being bounded on the North by the strip of land sold by petitioner to Alan R. Watts as set forth above, South by La. Hwy. 621, East by the strip of land given and granted by petitioner to the Ascension Parish Police Jury for a servitude for Kramer Road, and West by Herman P. Poirrier.
The property that is the subject of dispute in this litigation is a 70-foot by 1221.55-foot strip of land parallel, contiguous, and to the west of Kramer Road. The property is | Jocated at the corner of Kramer Road and Louisiana Highway 621, which is referred to as “Cantee Road.”
The demand for a preliminary injunction was tried initially, and the trial court granted the injunction. The issuance of a permanent injunction was tried later and the trial court rendered judgment in favor of Ms. Poirrier and against Dale’s Dozer Service, Inc. (Dale’s), recognizing petitioner’s possession of the immovable property and requiring defendant to assert title to the property via a petitory action within 30 days from the date the judgment became executory, and ordering defendant to pay $9,100.00 in damages. From this adverse judgment, Dale’s appeals. Ms. Poirrier neither appealed nor answered defendant’s appeal.
In written reasons for judgment dated June 21, 1996,[3] the trial court judge noted the following testimony and evidence:
1. Ms. Poirrier testified she lived on a larger piece of property, which included the strip of land in controversy, from 1931 until 1961, when it was partitioned and she received the land described in her petition. She stated: (a) the property was fenced for cattle for many years; (b) the fence extended to the edge of what was then the Kramer Road; (c) she signed a right of way allowing the parish to widen Kramer Road; (d) after the fence along Kramer Road was taken down, she gave permission for hay crops, grass cutting, and bushhog-ging along the Kramer Road frontage; (e) she never saw Mr. Jimmie Aucoin on the *534 property; and (f) she gave permission for election signs and other advertising signs to be put on her property, without protest by the Aucoins.
2. Peter All, Jr. testified about the signs on the property, Doris Cannon about the grass cutting, and Ronald Fairchild about the making of hay.
3. Eleman Babin, the police juror who contacted Ms. Poirrier about a right of way, confirmed the location of an old fence along the west side of the Kramer Road, | ¿which fence was removed by the police jury and not rebuilt. He also stated Ms. Poirrier signed a ditch right of way along the west side of the road.
4. Gerry Kramer stated he purchased approximately a four-acre plot in 1970 or 1971, and there were cross ties in the ground marking the western boundary of Mr. Aucoin’s property.
5. Willard Cointment, a land surveyor, was a defense witness whose title references were received for the limited purpose allowed in LSA-C.C.P. art. 3661.[4]
6. Gladys Womack, Jimmie Aucoin’s mother-in-law, testified she told Mr. Au-coin about a house being constructed on the property.
7. Jimmie Aucoin stated he thought he purchased 10 acres. After he sold land to James B. Hubbs, Jr., a survey indicated 8.3 acres was located east of Kramer Road. Thus, he came to believe he owned 1.97 acres[5] to the west, across Kramer Road. He took a tape measure and located cross ties on the strip on the west of Kramer Road. He testified he spoke to an attorney at the time construction of a house began on the property. However, he did not testify as to what, if anything, the attorney did.
8.Jimmie Dale Aucoin, Jr. testified his father sold property up to the Kramer Road and later located a cross tie and metal pipe between 65 and 70 feet to the west of Kramer Road.
The trial court also made the following findings of fact:
1. That the plaintiff Beulah M. Poir-rier possessed the disputed tract from the September 28th[,] 1961 partition to the date she gave ^permission for the Police Jury to tear down her fence to widen Kramer Road.
2. She possessed the disputed seventy feet by virtue of a fenced[-]in enclosure.
3. The fence was torn down and Kramer Road was widened in the early 1970’s[.]
4. As was pointed out by plaintiffs counsel, the permission to tear down the fence and the granting of a right of way by plaintiff were in themselves acts of possession.
5. After the fence was torn down, plaintiffs acts of possession consisted of permission to grow hay, permission for a water well pump repair sign and grass cutting and bushhog maintenance arrangements.
6. Conversely,] Jimmy [sic] Aucoin was not shown to have exercised any acts of possession. In 1974 he sold to Hubbs thinking that his property stopped at Kramer Road.
7. After reviewing a survey his only claim to possession was a 1978 or [19]79 contact with attorney Miriam Attaya. After doing this the plaintiffs *535 short[-]term vendee ceased construction and reconveyed to plaintiff.
8. Plaintiffs execution of conveyance and reconveyance documents were, of course, additional acts of possession.[6]
DISCUSSION

Possessory Action:

The elements of proof in a possessory action are set forth in LSA-C.C.P. art. 3658 as follows:
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
|r(4) The possessory action was instituted within a year of the disturbance.

Possession:

The possessory action- is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed or to be restored to the possession or enjoyment thereof when he has been evicted. LSA-C.C.P. art. 3655; Prieto v. St. Tammany Homesites, Inc., 602 So.2d 1111, 1113 (La.App. 1 Cir.1992). A possessor for purposes of the possessory action is defined in LSA-C.C.P. art. 3660 as follows:
A person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and. possesses for himself, whether in good or bad faith, or even as a usurper.
The requisite possession to entitle one to bring the possessory action is identical to the possession which is required to commence the running of acquisitive prescription. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766, 773 (La.1975). The elements and characteristics of the possession necessary to maintain a possessory action vary with the nature of the property and other attending relevant circumstances. Prieto, 602 So.2d at 1113. What constitutes possession in any ease is a question of fact, and each case must rest upon its own peculiar circumstances. Id.
Generally, the possession necessary to maintain a possessory action must be either corporeal possession or civil possession preceded by corporeal possession by the plaintiff or his ancestors in title. LSA-C.C.P. art. 3660; Prieto, 602 So.2d at 1113. The corporeal possession required in a particular case is governed by the nature of the land and the use to which the land is put. Cheramie v. Cheramie, 391 So.2d 1126, 1130 (La.1980). With regard to the possession requisite for the commencement of acquisitive prescription, LSA-C.C. art. 3476 provides that the possession must be |7continuous, uninterrupted, peaceable, public, and unequivocal. Prieto, 602 So.2d at 1114.
It is a well-established principle of law that physical occupancy of any part of a tract specifically described in a deed with the intent to possess the whole will constitute possession of all the property included therein. Id. Furthermore, in the absence of title, one has possession only of the area he or she actually possesses. LSA-C.C. art. 3426. The evidence was convincing and undisputed that Ms. Poirri *536 er and her ancestors had corporeal possession of the property for many years within enclosures.[7] The disputed tract was enclosed by a fence, erected by Ms. Poirrier’s grandfather, until the Kramer Road was widened. Ms. Poirrier used the land as a pasture and for hay growing for many years and up to the date of trial continued to cut the grass on the front of the tract and allowed the erection of a commercial sign.

Disturbance:

A disturbance in fact is defined in LSA-C.C.P. art. 3659 as follows:
A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any • obstacle in the way of that enjoyment.
A disturbance in law is defined in LSA-C.C.P. art. 3659 as follows:
A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right.

Burden of Proof:

In a possessory action, the burden of proof is upon the plaintiff to establish the essential elements thereof. LSA-C.C.P. art. 3658; Chaney v. State Mineral Board, 444 So.2d 105, 108 (La.1983).
In the instant case, the question of whether the acts of Ms. Poirrier constituted possession is a factual determination made by the trial court which will not be disturbed on appeal unless it was clearly wrong. See Prieto, 602 So.2d at 1114. After carefully reviewing the entire record in this matter, we find that the trial court correctly determined Ms. Poirrier established the requisite elements of a possesso-ry action and is entitled to possession of the property. The record before us on appeal includes conflicting testimony concerning various indicia of possession by the parties. We cannot say the trial court erred in assessing the credibility of the witnesses. By recognizing Ms. Poirrier’s possession of the disputed strip of land, the trial court inferentially found that the act of Mr. Aucoin, in the late 1970s, in halting the construction of a house was insufficient to constitute a disturbance of Ms. Poirrier’s possession. The record is devoid of any acts of possession on Mr. Aucoin’s part within a year of Dale’s entry upon the land in the summer of 1995.[8] Thus, the record supports the trial court’s finding that at the time of the disturbance by Dale’s, Ms. Poirrier had possession for more than one year prior to the act of disturbance and her suit was instituted within one year of the disturbance. Mr. Aucoin’s assignment of error that the trial court erred in finding Ms. Poirrier possessed the property is without merit.
*537 The evidence supports a finding Ms. Po-irrier always believed she owned the property by virtue of the fact she and her ancestors occupied the disputed strip within boundaries consisting of first, a fence, and later, Kramer Road. As a consequence, she intended to retain possession.
At the time of Mr. Aucoin’s purchase of a tract of land east of Kramer Road, he did not even realize he might have a claim to the tract at issue, thinking Kramer Road |9marked the western edge of his property. As he testified, he “bought it as ten acres of land with certain measurements ... [and] thought all the land was on one side of the road.” Thereafter, he did virtually nothing to take possession for many years. As soon as he began excavation on the property, Ms. Po-irrier sued. Counsel for Dale’s eloquently argues Ms. Poirrier abandoned possession by allowing the rear of the property to become overgrown, citing LSA-C.C. art. 3434. However, LSA-C.C. art. 3431 provides: “Once acquired, possession is retained by the intent to possess as owner even if the possessor ceases to possess corporally. This is civil possession.” Additionally, LSA-C.C. art. 3432 provides: “The intent to retain possession is presumed unless there is clear proof of a contrary intention.” The trial judge quoted the following summary provided in a memorandum by counsel for Ms. Poirrier:
The plaintiff initially had the corporeal possession of the entire larger tract on which her home was located. This possession was initially by fenced boundaries. When she granted permission for the widening of Kramer Road and for the removal of the fence along that side of the property!,] she exercised an act of possession. The fence was simply replaced by Kramer Road which furnished the same boundary for the limits of her possession. She initially had cattle on the property and made hay through tenants and they subsequently continued to maintain corporeal possession of the front of the property by cutting or bush-hogging it at least once a year and sometimes twice, by maintaining a sign thereon, etc. The fact that she permitted the rear portion of the disputed tract to grown [sic] up in brush and trees did not constitute an abandonment of her possession.
Once Ms. Poirrier began to possess corporally, her intent to retain possession is presumed and there was no clear proof of a contrary intention. LSA-C.C. art. 3432. She maintained a portion of this property, gave permission for the erection of a commercial sign without objection from Mr. Aucoin, and sued upon trespass. The abandonment referenced in LSA-C.C. arts. 3433 and 3434 requires a manifestation of the intention to give up possession. Allowing part of the property to become overgrown is not alone sufficient to establish abandonment in this matter, given the lengthy period of time Ms. Poirrier and her ancestors corporally possessed the property, the fact the area was within the historical boundaries of the fence and Kramer Road and other | ^evidence of her intent to continue to possess.[9] The trial judge was correct in finding no abandonment.
Finally, Mr. Aucoin asserts on appeal that the trial court awarded excessive damages. In support of this assertion, Mr. Aucoin states the trial court cited the case of Dickie’s Sportsman’s Centers, Inc. v. Department of Transportation and Development, 477 So.2d 744 (La.App. 1 Cir.), writ denied, 478 So.2d 530 (1985), which *538 Mr. Aucoin claims is distinguishable from the instant case. Actually, the trial court, in reasons for judgment dated July 20, 1999, quoted extensively from Britt Builders, Inc. v. Brister, 618 So.2d 899, 903 (La.App. 1 Cir.1993), a case in which this court held that a concrete slab poured by a builder diminished the value of the property involved, and the previous purchaser was entitled to full payment of damages resulting from that trespass. The excavation of dirt from the property involved in the instant case is comparable to the trespass in Britt, and the award of damages made by the trial court is consistent with the jurisprudence cited in that case. Accordingly, we find the trial court did not abuse its discretion in its damage award. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court and we assess Dale’s Dozer Service, Inc. with costs of this appeal.
AFFIRMED.

. The company is owned by Mr. Aucoin's son. Mr. Aucoin owns 49 percent of the stock.

. At the trial on the merits of the permanent injunction, counsel for Ms. Poirrier introduced the entire record made for the issuance of the preliminary injunction, including the court's reasons for the judgment granting the preliminary injunction. Counsel for defendant insisted that the record be made complete by having a transcript made of the testimony taken at the hearing for the preliminary injunction. The reasons for judgment dated June 21, 1996, are supported by the testimony which was later transcribed.

. Article 3661 provides:
In the possessory action, the ownership or title of the parties to the immovable property or real right therein is not at issue.
No evidence of ownership or title to the immovable property or real right therein shall be admitted except to prove:
(1)The possession thereof by a party as owner;
(2) The extent of the possession thereof by a party; or
(3) The length of time in which a party and his ancestors in title have had possession thereof.

. The 8.3 acres plus the 1.97 acres equals approximately 10 acres.

. The record indicates that Ms. Poirrier's niece began construction of a home partially on the disputed area of the property, which structure was never completed. The conveyance and reconveyance mentioned by the court are a reference to that occurrence.

. If the possessor “has no title, his possession must be inch by inch or within enclosures. The word enclosures does not necessarily mean fences; an enclosure may be a natural or an artificial boundary, such as a painted line that establishes with certainty the limits of plaintiffs possession.” (Footnote deleted. Emphasis added.) 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE: PROPERTY § 336 at 645-646 (1991). The fence and later Kramer Road were enclosures which clearly established the limits of possession.

. One of the errors Mr. Aucoin assigns is that the trial court erred in excluding evidence that he paid taxes on the disputed strip of land. Although payment of taxes is civil possession, unless civil possession is preceded by corporeal possession, civil possession in the form of payment of taxes is of no consequence. Thus, even if payment of taxes was made within the year preceding Dale’s entry upon the property, the trial court did not err in excluding the evidence because there was no corporeal possession by Mr. Aucoin prior to the sale to Dale’s.

. See YIANNOPOULOS, § 313 at 604, citing LSA-C.C. art. 3433, as revised in 1982, Comment (c):
What constitutes an abandonment of possession is a question of fact that is determined in light of all the circumstances. Ordinarily, abandonment of possession is established when the possessor manifests his intent by overt and unambiguous acts, for example by throwing away a movable thing. The intent to abandon is subjective but its existence may be established in light of objective considerations. (Footnote deleted.)