hDECUIR, Judge.
Cockrell Investment Partners filed this possessory action against Jeanerette Lumber & Shingle Company and others, asserting possession of certain lands in St. Martin Parish. The trial court rendered judgment in favor of Cockrell on two parcels of land in dispute and ruled in Jeaner-ette’s favor on the third disputed tract. Jeanerette appeals. After reviewing the evidence submitted at trial, we affirm the judgment rendered below.
The area in dispute is swamp land in the Atchafalaya Basin and is part of what is known as American Island. It is accessible only by plane or boat and is covered with water most of the year. It is located in Township 15 South, Range 12 East of St. Martin Parish and is described in the judgment as:
Section 6: The South half of the Northwest Quarter (S]4 NW %) and the Southeast Quarter (SE%), plus accretion, and
Section 8: Lot 4, plus accretion.
Throughout these proceedings, the parties have referred to the property at issue as the Disputed Lands. The trial court found Cockrell to be in possession of the Section 6 lands and Jeanerette to be in possession of the Disputed Lands located in Section 8. Only Jeanerette has appealed the trial court’s judgment; therefore, only that portion of the Disputed Lands located in Section 6 is at issue in this appeal.
Cockrell filed this suit after its possession was disturbed in 1996 by the recorda *1235 tion of a seismic permit and oil and gas lease option granted by Jeanerette in favor of Southwestern Energy Production Company. Cockrell alleged that it acquired possession of the Disputed Lands in 1928 and has maintained uninterrupted possession since that time. Jeanerette contends that it established corporeal possession in 1940 and has likewise maintained possession since that time.
Un Poirrier v. Dale’s Dozer Service, Inc., 99-2593, pp. 6-7 (La.App. 1 Cir. 11/3/00), 770 So.2d 531, 535, the court explained the legal requirements of a posses-sory action:
The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed or to be restored to the possession or enjoyment thereof when he has been evicted. LSA-C.C.P. art. 3655; Prieto v. St. Tammany Homesites, Inc., 602 So.2d 1111, 1113 (La.App. 1 Cir.1992). A possessor for purposes of the possessory action is defined in LSA C.C.P. art. 3660 as follows:
A person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.
The requisite possession to entitle one to bring the possessory action is identical to the possession which is required to commence the running of acquisitive prescription. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766, 773 (La.1975). The elements and characteristics of the possession necessary to maintain a possessory action vary with the nature of the property and other attending relevant circumstances. Prieto, 602 So.2d at 1113. What constitutes possession in any case is a question of fact, and each case must rest upon its own peculiar circumstances. Id.
Generally, the possession necessary to maintain a possessory action must be either corporeal possession or civil possession preceded by corporeal possession by the plaintiff or his ancestors in title. LSA C.C.P. art. 3660; Prieto, 602 So.2d at 1113. The corporeal possession required in a particular case is governed by the nature of the land and the use to which the land is put. Cheramie v. Cheramie, 391 So.2d 1126, 1130 (La.1980). With regard to the possession requisite for the commencement of acquisitive prescription, LSA C.C. art. 3476 provides that the possession must be continuous, uninterrupted, peaceable, public, and unequivocal. Prieto, 602 So.2d at 1114.
Article 3658 of the Code of Civil Procedure provides for the possessory action and delineates the plaintiffs burden of proof:
[¡¡To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
*1236 (3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
A disturbance in law is defined in Article 3659 of the Code of Civil Procedure as “the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property.” The Civil Code describes possession as a matter of fact and defines corporeal possession as the exercise of physical acts of use, detention, or enjoyment over a thing. La.Civ.Code arts. 3422 and 3425. Additionally, as the Poir-rier ease noted, possession is a factual determination and is ascertained by the nature of the property at issue and the type of use which can be made of it.
In its reasons for judgment, the trial court reviewed the evidence of possession offered by both Cockrell and Jeaner-ette. The court concluded that Cockrell had proved its right to maintain possession of the Disputed Lands located in Section 6, but not in Section 8, the latter of which the court found to be in the possession of Jeanerette. We have reviewed the evidence and agree with the factual conclusions, reached by the trial court and which we quote in extenso herein:
From the evidence, it appears that each party has acquired a deed transla-tive of title. Cockrell traces its title to separation from the sovereign, acquiring the subject property in 1928. Jeaner-ette traces its title to an acquisition in 1895.
14Jeanerette paid taxes on all of the disputed lands in 1896. Thereafter, Jeanerette has continuously paid taxes on the Section 8 Disputed Lands since 1908 and on the Section 6 Disputed Lands since 1940, when it wrote to the Assessor of St. Martin Parish asking that it be billed for taxes on the Section 6 Disputed Lands. Cockrell has paid taxes on all of the Disputed Lands since its acquisition in 1928.
Both parties introduced evidence, (testimonial and documentary) of inspections of the Disputed Lands through the years. Cockrell inspected by air looking for squatters, as well as by agents who traveled by boat to various areas. The exact areas inspected are not subject to definition by this Court in reviewing the evidence. Nevertheless, suffice it to say, that Cockrell’s inspections were, in large measure of the Section 6 Disputed Lands and not the Section 8 Disputed Lands.
Jeanerette, for a number of years, has had employees whose jobs included inspection of its properties in the Atchafa-laya Basin and marking boundaries of Jeanerette properties. The outer limits of properties marked as Jeanerette boundaries excluded the Section 6 Disputed Lands, indicating to the Court that Jeanerette did not include the Section 6 Disputed Lands within its inventory of property claimed or possessed. By contrast, there is evidence of the marking of Jeanerette boundaries in the Section 8 Disputed Land. While there is evidence of inspection by Jeanerette of Section 6 lands, there is nothing to identify specifically the Section 6 Disputed Lands, since other portions of Section 6 apparently are claimed by Jeanerette and do not form a part of the subject of this litigation. Additionally, on the plats attached to the inspection reports, the inspections do not appear to have covered the Section 6 Disputed Lands, but rather, portions of Section 6 over which *1237 there is no dispute of possession or ownership in favor of Jeanerette.
With respect to the Section 8 Disputed Lands, there is ample evidence of Jeanerette’s inspection and work done in maintaining boundaries, but nothing more than isolated incidences of Cock-rell’s presence and/or acts of possession.
The evidence supports the conclusion that timber operations on the Section 6 Disputed Lands were conducted by Cockrell’s ancestor-in-title, F.B. Williams in the latter years of the 19th century and by virtue of his reservation in sales of timber rights, again harvesting all of the merchantable timber on the Section 6 Disputed Lands in 1903 and 1904. Later, beginning in 1933, Wilbert Stephens exercised grazing rights on Section 6 Disputed Lands on Cockrell’s behalf. There is no evidence of timber activity on the part of Cock-rell, its lessees or ancestors-in-title on the Section 8 Disputed Lands. Likewise, there is no evidence of Jeanerette conducting timber operations on the Section 6 Disputed Lands. There is ample evidence of Jeanerette conducting timber operations in the 1930’s through contract with Joy and Laws Timber Company and Philip Barrilleaux on the Section 8 Disputed Lands.
| Jeanerette has executed oil and gas leases covering the Section 8 Disputed Lands beginning in 1922, but has not executed such leases covering the Section 6 Disputed Lands until the Permit and Option which prompted the filing of this possessory action by Cockrell. Cockrell has executed oil and gas leases covering the Section 6 Disputed Lands since 1952 but has executed none covering the Section 8 Disputed Lands except one lease in 1948, identifying the Disputed Section 8 Lands. There is, however, no indication of any activity taking place as a result of that lease. In 1962 and 1979, Cockrell granted seismic permits affecting the Section 8 as well as other Cockrell land. There is no indication, however, that the Section 8 lands involved were the Section 8 Disputed Lands. In 1997, Jeanerette granted a seismic permit covering Section 6 Disputed Lands as well as other Jeanerette lands, which permit resulted in this litigation.
The evidence introduced convinces this Court that prior to the disturbance created by Jeanerette filing the seismic permit in 1997, Cockrell was in possession of the Section 6 Disputed Lands. The evidence likewise convinces the Court that Cockrell is not now, and as of the said disturbance, was not in possession of the Section 8 Disputed Lands.
While it is apparent that beginning in 1979, Jeanerette executed various surface leases for hunting/fishing purposes, covering all of Section 6, it does not appear that these instruments were recorded in the public records St. Martin Parish. No testimony was introduced to prove the actual exercise of rights pursuant to these agreements. Even if rights had actually been exercised, the Court finds that these actions, considering the nature of the property, i.e. swamp land, and the lack of filing in the public records were insufficient to notify Cockrell, the original possessor, that its dominion had been seriously challenged and therefore did not constitute an actionable disturbance of Cockrell’s possession of the Section 6 Disputed Lands. Cf. Evans v. Dunn, 458 So.2d 650 (La.App. 3 Cir.1984).
Likewise, even though Cockrell may have conducted aerial or other sporadic *1238 inspections of the Section 8 Disputed Lands over the years, the Court finds that such were not of a character to notify Jeanerette, the original possessor of the Section 8 Disputed Lands, that its dominion had been seriously challenged and therefore did not constitute an actionable disturbance of Jeanerette’s possession of the Section 8 Disputed Lands.
In this appeal, Jeanerette contends the trial court erred in determining that the boundary markings and inspections performed by Jeanerette employees did not involve the Disputed Lands, whereas the inspections, timber production, and granting of seismic permits by Cockrell did involve the Disputed Lands, thereby supporting 1 fithe conclusion that Cockrell had established possession. Our review of the testimony and documentary evidence, however, reveals no manifest error in the factual findings of the trial court. The conclusions reached by the trial court are supported by the evidence contained in the record.
Jeanerette also assigns as error the trial court’s legal conclusion that the surface leases granted over the years by Jeanerette were not sufficient to constitute a disturbance of Cockrell’s possession, as the leases were not recorded. Jeanerette contends that the leases were offered as evidence of Jeanerette’s possession and its intent to possess as owner from the time of its acquisition of the Disputed Lands in 1895. Such acts of civil possession, however, can serve as proof of possession only if those acts have been preceded by corporeal possession. La.Code Civ.P. art. 3660. The trial court did not find the requisite corporeal possession by Jeanerette on the Disputed Lands, and we find no manifest error in that factual conclusion. Therefore, the trial court was correct in noting that evidence of the acts of civil possession by Jeanerette proved neither its own possession nor a disturbance of Cockrell’s possession.
Finding no manifest error in the conclusions reached by the trial court concerning the possession of the Disputed Lands located in Section 6, we affirm the determination of possession in favor of Cockrell. For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of the appeal are assessed to Jeaner-ette Lumber & Shingle Company.
AFFIRMED.